Achiel D'HUYVETTER, Plaintiffs-Respondents-Cross Appellants,

v.

## A.O. SMITH HARVESTORE PRODUCTS, Defendant-Cross Respondent,

A.O. SMITH CORPORATION & Employers Insurance of Wausau, a Mutual Company, Defendants,

HEART O'WISCONSIN HARVESTORE SYSTEMS, INC., Defendant-Appellant-Cross Respondent.

Court of Appeals

*No. 88–1880. Oral argument May 24, 1990.—Decided August 22, 1991.*

(Also reported in 475 N.W.2d 587.)

312

For the defendant-appellant the cause was submitted on the briefs of *J. Drew Ryberg* of *Garvey, Anderson, Kelly & Ryberg, S.C.* of Eau Claire and *Donald E. Egan* and *Bonita L. Stone* of *Katten Muchin & Zavis* of Chicago, Illinois and oral argument by *Bonita L. Stone* and *J. Drew Ryberg.*

For the plaintiffs-respondent-cross appellants the cause was submitted on the briefs of *James R. Koby* of *Parke, O'Flaherty, Heim Egan & Koby, Ltd.* of La Crosse and *Charles A. Bird* of *Bird & Jacobsen* of Rochester, Minnesota and oral argument by *James R. Koby* and *Charles A. Bird.*

For the defendant-cross-respondent the cause was submitted on the brief of *Dennis M. Sullivan* of *Herrick, Hart, Duchemin, Danielson & Guettinger, S.C.* of Eau Claire and oral argument by *Dennis M. Sullivan.*

Before Eich, C.J., Dykman and Sundby, JJ.

DYKMAN, J.   Heart O'Wisconsin Harvestore Systems, Inc., a distributor of Harvestore silos, appeals from a judgment against it for intentional misrepresentation, awarding damages of $275,000. Achiel and Anitta D'Huyvetter (plaintiffs) cross-appeal numerous pretrial and post-trial decisions of the trial court.

## I.  ISSUES AND DECISION

On appeal, Heart O'Wisconsin contends: (1) that plaintiffs failed to present evidence sufficient to establish intentional misrepresentation; (2) that plaintiffs did not produce evidence sufficient to allow a jury to find "loss of bargain" damages of $150,000; and (3) that the trial court erred in allowing the jury to consider evidence of prejudgment interest in calculating consequential damages of $100,000.

We conclude that the evidence was sufficient to support the jury finding of intentional misrepresentation against Heart O'Wisconsin. We further conclude, however, that plaintiffs only produced evidence sufficient to support "loss of bargain" damages of $65,167 against Heart O'Wisconsin, and that the jury was improperly allowed to consider prejudgment interest evidence in calculating consequential damages.

On cross-appeal, plaintiffs argue: (1) that the trial court erred in granting summary judgment to Heart O'Wisconsin and A.O. Smith Harvestore Products, Inc. (A.O. Smith) on the issues of strict liability and negligence; (2) that the trial court erred in directing a verdict in favor of Heart O'Wisconsin and A.O. Smith on the issue of negligent misrepresentation; (3) that the trial court abused its discretion in framing the intentional misrepresentation special verdict questions; (4) that the trial court abused its discretion by framing the special verdict questions so that, if the jury found against Heart O'Wisconsin on intentional misrepresentation, they were directed not to determine strict responsibility for misrepresentation; (5) that the jury verdict is inconsistent; (6) that the trial court abused its discretion by excluding evidence of future losses; and (7) that the trial court improperly denied plaintiffs' motion for double costs pursuant to sec. 807.01(3), Stats.

We conclude the trial court properly granted summary judgment to Heart O'Wisconsin and A.O. Smith on the strict liability and negligence claims. We further conclude that the trial court erred in directing a verdict in A.O. Smith's favor on the negligent misrepresentation claim but that, with respect to Heart O'Wisconsin, plaintiffs have waived this claim.

We conclude that the trial court abused its discretion by framing the special verdict questions so that the

jury did not consider the issue of strict responsibility for misrepresentation against Heart O'Wisconsin. In addition, we conclude the jury verdicts are inconsistent.

Finally, we conclude that the trial court properly framed the intentional misrepresentation special verdict questions; that the trial court did not abuse its discretion by excluding evidence of future losses; and that the trial court properly denied plaintiffs' motion for double costs.

We thus affirm in part, reverse in part, and remand with instructions that the following issues be retried: (1) the liability of Heart O'Wisconsin and A.O. Smith for strict responsibility for misrepresentation; (2) the liability of A.O. Smith for negligent misrepresentation; and (3) the consequential damages incurred by plaintiffs. We also direct the trial court to reduce the award for "loss of bargain" damages to $65,167.

## II.  BACKGROUND

Plaintiffs operate a dairy farm near Humbird, Wisconsin. In early 1982, two salesmen for Heart O'Wisconsin, Richard Gouge and Thomas Moffett, repeatedly visited plaintiffs, attempting to sell them a "Harvestore" system, which is a large grain silo designed for preserving and storing feed for livestock. The Harvestore system is manufactured by A.O. Smith. Gouge and Moffett discussed with plaintiffs the virtues of the Harvestore system and furnished them with materials demonstrating its operation. Moffett also furnished plaintiffs with written calculations of the savings the Harvestore system would produce.

In April 1982, plaintiffs executed an order from Heart O'Wisconsin and an equipment lease agreement from Agristor Leasing for a Harvestore system. The cost

of the Harvestore system was $65,167. The total amount to be paid under the lease was $98,911.44.

Dissatisfied with the performance of the Harvestore, the plaintiffs in 1985 sued A.O. Smith and Heart O'Wisconsin.[1] Plaintiffs alleged strict responsibility for misrepresentation, negligent misrepresentation, intentional misrepresentation, breach of express and implied warranties, breach of contract, strict liability, negligence and advertising fraud.

Heart O'Wisconsin and A.O. Smith moved for summary judgment. The trial court granted the motion with respect to plaintiffs' claims of negligence, strict liability and breach of warranty.[2]

After a jury trial, the trial court directed a verdict dismissing the negligent misrepresentation claim against both defendants and the false advertising claim against A.O. Smith. The case was submitted to the jury on plaintiffs' claims against Heart O'Wisconsin and A.O. Smith

[1]In addition to Heart O'Wisconsin and A.O. Smith, plaintiffs originally named as codefendants Agristor Leasing and A.O. Smith Corporation. Plaintiffs stipulated to the voluntary dismissal of Agristor Leasing, and, following the presentation of plaintiffs' case-in-chief, the trial court directed a verdict in favor of A.O. Smith Corporation.

Plaintiffs' second-amended complaint also purported to join as a co-defendant Employers Insurance of Wausau. This second-amended complaint was never filed, however, and the trial court granted Employers Insurance of Wausau's motion for dismissal.

[2]Although the trial court found that Heart O'Wisconsin and A.O. Smith had not breached any express or implied warranties, it denied summary judgment on the issue of whether the disclaimers and limited remedies of the lease agreement failed of their essential purpose or, alternatively, were unconscionable. Following the presentation of plaintiffs' case-in-chief, the trial court directed a verdict for Heart O'Wisconsin and A.O. Smith on the remaining warranty claims.

318

for strict responsibility for misrepresentation and intentional misrepresentation, and against Heart O'Wisconsin for false advertising.

The jury returned a verdict against Heart O'Wisconsin on the false advertising and intentional misrepresentation claims, awarding plaintiffs "loss of bargain" damages of $150,000, consequential damages of $100,000, and punitive damages of $25,000. The jury did not decide the strict responsibility for misrepresentation claim because the special verdict questions were framed so that if the jury found against Heart O'Wisconsin on the intentional misrepresentation claim, it bypassed the strict responsibility for misrepresentation question. The jury returned a verdict in A.O. Smith's favor on the intentional misrepresentation claim, finding that A.O. Smith did not make representations with the intent to deceive and induce plaintiffs to act on them.

The jury found that A.O. Smith's representations were not the cause of plaintiffs' damages. However, it also found that twenty percent of plaintiffs' damages were the result of the misrepresentations made by A.O. Smith. Both plaintiffs and Heart O'Wisconsin filed numerous post-verdict motions. The trial court granted Heart O'Wisconsin's motion for judgment notwithstanding the verdict on the false advertising claim.

On August 22, 1988, the trial court entered judgment on the verdict for intentional misrepresentation against Heart O'Wisconsin. Heart O'Wisconsin appeals and plaintiffs cross-appeal.

### III.  APPEAL—INTENTIONAL MISREPRESENTATION

Heart O'Wisconsin contends that there was insufficient evidence to establish intentional misrepresenta-

tion. On appeal, we examine jury verdicts to determine whether the record contains "any credible evidence" that under any reasonable view supports the verdict. *Ford Motor Co. v. Lyons,* 137 Wis. 2d 397, 442, 405 N.W.2d 354, 372 (Ct. App. 1987). Where, as here, the verdict has the trial court's approval, our scope of review is even more limited. *Fehring v. Republic Ins. Co.,* 118 Wis. 2d 299, 305, 347 N.W.2d 595, 598 (1984). We search for credible evidence to sustain the jury's verdict, not for evidence to sustain a verdict the jury could have reached but did not. *Id.* at 305-06, 347 N.W.2d at 598.

The elements of a claim for intentional misrepresentation are: (1) a false representation of fact; (2) made with intent to defraud and for the purpose of inducing another to act upon it; and (3) upon which another did in fact rely and was induced to act, resulting in injury or damage. *Lundin v. Shimanski,* 124 Wis. 2d 175, 184, 368 N.W.2d 676, 680–81 (1985); *Williams v. Rank & Son Buick, Inc.,* 44 Wis. 2d 239, 242, 170 N.W.2d 807, 809 (1969). Generally, the false representation must relate to present or pre-existing facts and cannot be merely unfulfilled promises or statements of future events. *Hartwig v. Bitter,* 29 Wis. 2d 653, 656, 139 N.W.2d 644, 646 (1966); *Lundin,* 124 Wis. 2d at 192, 368 N.W.2d at 684.

### A.  False Representation of Fact

Heart O'Wisconsin argues that the statements plaintiffs claim they relied upon concerned future events, rather than pre-existing facts. Although some of the statements, such as those describing increased milk production profits, relate to future events, plaintiffs also testified as to numerous statements regarding present design features of the Harvestore system.

Plaintiffs were told that the Harvestore system was "oxygen-free," that all air entering the silo went into and out of specially designed "breather bags," and that no ambient air contacted the feed. Anitta D'Huyvetter testified that Heart O'Wisconsin salesmen showed her diagrams comparing a Harvestore system to a fruit jar and sealed tin cans, and explained that the oxygen-exclusion concept of the Harvestore system was the same. She testified that she was told that, because oxygen was excluded from the system, the haylage would be better preserved and would retain a higher protein content, thus reducing their need to use protein supplement. Finally, she stated that she was told that, as a result of the oxygen-limiting capabilities of the Harvestore system, the feed would be more palatable to the cows, and more easily digested. We conclude that there was credible evidence of actionable misrepresentations.

### B. Justifiable Reliance

Heart O'Wisconsin argues that the plaintiffs failed to prove that they relied on the statements by Heart O'Wisconsin representatives. However, Anitta D'Huyvetter testified that she relied on the statements that the Harvestore system was oxygen-free and that, as a result, the protein content in the feed would increase and the feed would be more palatable to the cows. Plaintiffs were justified in relying on the representations of the Heart O'Wisconsin salesmen because of plaintiffs' inferior knowledge of the Harvestore's capabilities. The salesmen's representations were not so incredible that no reasonable person would have relied on them.

Heart O'Wisconsin argues that plaintiffs could not have justifiably relied on statements that the Harvestore

structure was "oxygen-free." Heart O'Wisconsin cites Achiel D'Huyvetter's testimony that he knew air entered the Harvestore each time the structure was filled or unloaded.

While a purchaser may not rely on obviously false statements, it is not necessary "that he [or she] . . . meet every positive statement with incredulity and . . . ascertain whether it is false." *Household Finance Corp. v. Christian,* 8 Wis. 2d 53, 56, 98 N.W.2d 390, 392–93 (1959) (quoting *Jacobsen v. Whitely,* 138 Wis. 434, 436, 120 N.W. 285, 286 (1909)). Achiel D'Huyvetter stated that he was not aware of the fact that, because a dome of empty space existed under the feed, a large amount of air entered the Harvestore system during unloading. Anitta D'Huyvetter stated that she was told that any other air that entered the system was contained in the breather bags, and kept from contacting the feed. We conclude that there was credible evidence that plaintiffs justifiably relied on Heart O'Wisconsin's false representations.

C.   Damages: Intentional Misrepresentation

### 1.   *Loss of Bargain Damages*

Heart O'Wisconsin contends that the trial court erred by entering judgment on the jury award of $150,000 for "loss of bargain" damages. They argue that no credible evidence was produced at trial regarding the value of the Harvestore system at the time it was purchased.

In intentional misrepresentation cases, damages are calculated according to the "benefit of the bargain" rule. *Ollerman v. O'Rourke Co., Inc.,* 94 Wis. 2d 17, 52, 288 N.W.2d 95, 112 (1980). Under this rule, the measure of

the purchaser's damages is the difference between the value of the property as represented and its actual value as purchased. *Id.* at 52–53, 288 N.W.2d at 112; *Anderson v. Tri-State Home Improvement Co.,* 268 Wis. 455, 464, 67 N.W.2d 853, 859 (1955).

There is evidence that the value of the Harvestore system at the time of purchase was the purchase price, $65,167.[3] The price paid by the purchaser is relevant evidence as to the value of the property as represented. *Anderson,* 268 Wis. at 464a, 67 N.W.2d at 859. We conclude that plaintiffs produced credible evidence that the Harvestore was represented as being worth $65,167 at the time of purchase.

The only evidence plaintiffs produced regarding the *actual value* of the Harvestore at the time of purchase was Anitta D'Huyvetter's testimony that, in her opinion, the Harvestore was worth "nothing." In Wisconsin, the general rule is that a non-expert owner may testify concerning the value of their property, regardless of whether it is realty or personalty. *Perpignani v. Vonasek,* 139 Wis. 2d 695, 737, 408 N.W.2d 1, 18 (1987). The weight to be attached to a non-expert owner's testimony is for the trier of fact. *Trible v. Tower Ins. Co.,* 43 Wis. 2d 172, 187, 168 N.W.2d 148, 156 (1969). We conclude that plaintiffs produced credible evidence at trial to establish that the value of the Harvestore system as represented was $65,167, and that the value of the Harvestore system

[3]Plaintiffs argue that the value of the Harvestore system as represented should be measured by the total amount payable under the lease, $98,911.44. We decline to adopt this measure, as it does not represent the value of the Harvestore system but, rather, the value of the system plus the value of deferring payment for the term of the lease.

at the time of purchase was $0. Plaintiffs therefore established "loss of bargain" damages of $65,167.

The jury, however, awarded "loss of bargain" damages of $150,000. While an injured party may recover loss of bargain damages in addition to consequential damages, these damages may not be duplicative. *Gyldenvand v. Schroeder,* 90 Wis. 2d 690, 698, 280 N.W.2d 235, 239 (1979). Plaintiffs were awarded $100,000 in consequential damages and, therefore, any consequential damage element in the "loss of bargain" award is duplicative. We direct the trial court to reduce the loss of bargain damage award to $65,167.

## 2. *Consequential Damages*

Heart O'Wisconsin contends the trial court erred in admitting the expert testimony of Dr. Michael Behr, an agricultural economist, regarding the interest expenses incurred by plaintiffs. We agree.

As part of his damage presentation, Behr introduced a report entitled "The Economic Loss to the D'Huyvetter Farm." Table 1 of the report included figures representing an "interest factor," expressed in percentages, and lost "interest," expressed monetarily. The total lost interest was $51,441. Behr explained that the interest figures represented "[t]he loss of the use of that money or that value from the time the initial loss occurred until the present."

Prejudgment interest may be awarded only if the amount of damages is determinable prior to judicial determination, *i.e.,* where there is a reasonably certain standard of measurement from which, when correctly applied, one can ascertain the amount owed. *Klug &*

*Smith Co. v. Sommer,* 83 Wis. 2d 378, 384, 265 Wis. 2d 269, 272 (1978). An award of prejudgment interest is inappropriate where there is a genuine dispute as to the amount of damages throughout the trial. *Tony Spychalla Farms, Inc. v. Hopkins Agric. Chem. Co.,* 151 Wis. 2d 431, 444, 444 N.W.2d 743, 750 (Ct. App. 1989).

Plaintiffs argue that Behr's interest figures do not represent prejudgment interest but, rather, "involve[ ] the type of interest that an Agricultural Economist takes into consideration in conducting an economic analysis of loss to a dairy herd." This type of damage-specific explanation could be offered to recharacterize pre-verdict interest in virtually any case.

The damages suffered by plaintiffs were the subject of "genuine dispute." *Spychalla,* 151 Wis. 2d at 444, 444 N.W.2d at 750. Plaintiffs were not entitled to recover prejudgment interest. Therefore, we reverse and remand with instructions that the issue of consequential damages incurred by the plaintiffs be retried.

## IV.   CROSS-APPEAL

### A.   Negligence and Strict Liability

Plaintiffs contend that the trial court erred in granting summary judgment dismissing plaintiffs' negligence and strict liability claims.

Summary judgment is governed by sec. 802.08, Stats. *Shannon v. Shannon,* 150 Wis. 2d 434, 441, 442 N.W.2d 25, 29 (1989). Summary judgment methodology is well established. *See Preloznik v. City of Madison,* 113 Wis. 2d 112, 115–16, 334 N.W.2d 580, 582–83 (Ct. App. 1983). Our review is *de novo* and independent of the trial court's decision.

325

Plaintiffs' amended complaint alleged that they incurred the following damages as a result of defects in the Harvestore:

> [T]he expense of leasing the Harvestore; interest expenses; the expense of converting their farm operation for use of the Harvestore; the costs of numerous repairs on the Harvestore; reduced milk production; reduced production of young stock; costs of purchasing additional protein to supplement their cattles' diet; loss of profit associated with sales of calves and cattle; death and illness of their livestock; costs of purchasing additional equipment; and electrical costs.

Defendants' answers generally denied plaintiffs' allegations.

In support of their motion for summary judgment, defendants contended that plaintiffs suffered only economic loss. If that is the case, the trial court correctly dismissed plaintiffs' strict liability and negligence claims because such claims do not lie to recover purely economic loss.

"[A] commercial purchaser of a product cannot recover solely economic losses from the manufacturer under negligence or strict liability theories." *Sunnyslope Grading, Inc. v. Miller, Bradford & Risberg, Inc.,* 148 Wis. 2d 910, 921, 437 N.W.2d 213, 217–18 (1989); *see Northridge Co. v. W.R. Grace & Co.,* 162 Wis. 2d 918, 925–28, 471 N.W.2d 179, 181–83 (1991). In *Sunnyslope,* a purchaser of backhoes sued the manufacturers in strict liability and negligence for repairs not covered by the manufacturer's warranties. *Id.* at 914–15, 437 N.W.2d at 214–15. Confining the plaintiff to contract remedies, the court stated, "We agree with the weight of authority which supports the proposition that the legislative pro-

tections granted by the Uniform Commercial Code are not to be buttressed by tort principles and recovery." *Id.* at 916, 437 N.W.2d at 215 (citations omitted).

In *Tony Spychalla Farms, Inc. v. Hopkins Agric. Chem. Co.,* 151 Wis. 2d 431, 437–38, 444 N.W.2d 743, 747 (Ct. App. 1989), the court recognized an exception to the *Sunnyslope* doctrine where the damage was to "other property." In *Spychalla,* a potato farmer brought a strict liability action against the manufacturer of a dust designed to prevent potatoes from rotting. *Id.* at 434–35, 444 N.W.2d at 745–46. As a result of applying the dust, the farmer's potatoes petrified. *Id.* at 435, 444 N.W.2d at 746. The court held:

> [I]n *Sunnyslope,* the defective product did not cause injury to another person or property; rather, it involved a product that failed to function as expected or anticipated by the purchaser. Therefore, the *Sunnyslope* holding does not apply here, where a defective product damages other property.

*Spychalla,* 151 Wis. 2d at 438, 444 N.W.2d at 747.

Defendants contend that the damage incurred by plaintiffs constituted economic loss. Whether damage to Harvestore-stored feed or to the animals consuming it is damage to "other property" has been previously considered. In *Agristor Leasing v. Guggisberg,* 617 F. Supp. 902, 908 (D. Minn. 1985), applying Minnesota law, the court stated:

> [We] conclude[ ] as a matter of law that the alleged damage to the alfalfa feed and Holstein cows is non-recoverable economic loss. The Harvestore structure in question was purchased for the purpose of storing feed for the Guggisbergs' dairy operation, a commercial venture. The essence of their complaint is that the Harvestore failed to perform as expected, and

they seek to recover the resulting losses to their dairy farm, the loss of the benefit of their bargain. Under such circumstances, the court concludes, as a matter of law, that the Guggisbergs' alleged damage is an economic loss which is not exempted by the "other property" language of *Superwood [Corp. v. Siempelkamp Corp.,* 311 N.W.2d 159 (Minn. 1981), *overruled, Hapka v. Paquin Farms,* 458 N.W.2d 683 (Minn. 1990)].

*See Agristor Leasing v. Meuli,* 634 F. Supp. 1208, 1217–18 (D. Kan. 1986); *see also Northridge Co.,* 162 Wis. 2d at 937–38, 471 N.W.2d at 186.

We find this reasoning persuasive. The expected function of the Harvestore was to enrich the feed, providing enhanced nutrition for the cows. The damages stem from the failure of the Harvestore to perform "as expected," *Spychalla,* 151 Wis. 2d at 438, 444 N.W.2d at 747, and not from "injury to another person or property." *Id.*

Plaintiffs contend that the *Sunnyslope* doctrine is only applicable where the parties to the transaction have relatively equal bargaining power. Plaintiffs point to the court's statement in *Sunnyslope* that "[t]he Uniform Commercial Code—Sales, ch. 402, Stats., sets forth the rights and remedies which govern a transaction *between two commercial parties of relatively equal bargaining power." Id.* at 916, 437 N.W.2d at 215 (emphasis added).

While the court may in the future choose to limit *Sunnyslope* to nonconsumer transactions,[4] we do not

---

[4]*See* Note, *Sunnyslope Grading, Inc. v. Miller, Bradford & Risberg, Inc.: What Recovery for Economic Loss—Tort or Contract?,* 1990 Wis. L. Rev. 1337, 1359 (noting that "it is possible that Wisconsin may adopt a 'type of consumer' test for economic

believe the reference quoted above had that effect. We also note, as did the trial court, that the transaction involved is a commercial one and that a farmer's acquisition of a silo is hardly akin to the acquisition by a consumer of, for example, a vacuum cleaner.

Plaintiffs contend that the *Sunnyslope* doctrine is inapplicable because the transaction in this case was a lease, rather than a sale. Assuming, without deciding, that the transaction was a commercial lease, we conclude that the court's holding in *Sunnyslope* is equally applicable.

Discussing *East River Steamship Corp. v. Transamerica Delaval, Inc.,* 476 U.S. 858 (1986), the court in *Sunnyslope* stated:

> [I]n the commercial context litigation over whether a product functions properly arises when a product does not meet the customer's economic expectations—that is, the product is of insufficient value. The question of product value and quality is intended to be addressed by warranties and the Uniform Commercial Code. *Contract law, the law of warranty and the Uniform Commercial Code* are designed to allow the parties to allocate the risk of product failure. [Emphasis added.]

*Sunnyslope,* 148 Wis. 2d at 920–21, 437 N.W.2d at 217.

In view of the slight difference between a commercial lease and sale in this context, as well as the increasingly frequent use of long-term commercial leases, we

loss recovery . . . [which] would limit recovery for economic loss to remedies provided by the U.C.C. if the purchaser is a commercial party, but permit tort recovery if the purchaser is an ordinary consumer.") (Footnote omitted.)

believe it would be anomalous to subject the latter to the limitations of *Sunnyslope* and not the former.

We conclude that the trial court did not err in granting defendants summary judgment on the strict liability and negligence claims.

### B. Negligent Misrepresentation

Plaintiffs contend that the trial court erred in directing a verdict in favor of Heart O'Wisconsin and A.O. Smith on the claim of negligent misrepresentation. Heart O'Wisconsin and A.O. Smith argue that, by failing to challenge the directed verdict on the negligent misrepresentation claim in their post-verdict motions, plaintiffs have waived the claim and are precluded from raising it on appeal. "[F]ailure to include alleged errors in the motions after verdict constitutes a waiver of the errors." *Ford Motor Co. v. Lyons,* 137 Wis. 2d 397, 417, 405 N.W.2d 354, 362 (Ct. App. 1987) (citation omitted).

Regarding A.O. Smith, this assertion is incorrect. In plaintiffs' motion for a new trial as to A.O. Smith, plaintiffs raise as error the trial court's "fail[ure] to submit to the jury the theory of negligent misrepresentation." Plaintiffs, however, did not challenge the directed verdict on the negligent misrepresentation claim in their post-trial motions as to Heart O'Wisconsin.

Plaintiffs argue that because they are respondents, the *Ford* rule is inapplicable. However, with respect to the issue of negligent misrepresentation, they are cross-appellants and the *Ford* rule applies. We conclude plaintiffs have waived their negligent misrepresentation claim against Heart O'Wisconsin. When a party raises several errors by motions after the verdict, they must raise all

alleged errors, or, *as appellant or cross-appellant,* those issues not raised are waived.

We thus examine only whether the trial court erred in directing a verdict against plaintiffs on their negligent misrepresentation claim against A.O. Smith. The standard for granting a directed verdict is set out in sec. 805.14(1), Stats.:

> No motion challenging the sufficiency of the evidence as a matter of law to support a verdict, or an answer in a verdict, shall be granted unless the court is satisfied that, considering all credible evidence and reasonable inferences therefrom in the light most favorable to the party against whom the motion is made, there is no credible evidence to sustain a finding in favor of such party.

A verdict should be directed only "if the evidence gives rise to no dispute as to the material issues or when the evidence is so clear and convincing as reasonably to permit unbiased and impartial minds to come to but one conclusion." *Holloway v. K-Mart Corp.,* 113 Wis. 2d 143, 150, 334 N.W.2d 570, 574 (Ct. App. 1983) (citation omitted).

The elements of a claim for negligent misrepresentation are: (1) a duty of care or voluntary assumption of a duty on the part of the defendant; (2) a breach of that duty, *i.e.,* failure to exercise ordinary care in making the representation or in ascertaining the facts; (3) a causal link between the conduct and the injury; and (4) actual loss or damage as a result of the injury. *Green Spring Farms v. Kersten,* 136 Wis. 2d 304, 319, 401 N.W.2d 816, 822 (1987).

Anitta D'Huyvetter testified that she was shown numerous documents produced by A.O. Smith describing the oxygen-limiting features of the Harvestore system. Plaintiffs produced expert testimony regarding the falsity of this claim.

"A defendant's duty is established when it can be said that it was foreseeable that his act or omission to act may cause harm to someone." *A.E. Investment Corp. v. Link Builders, Inc.,* 62 Wis. 2d 479, 484, 214 N.W.2d 764, 766 (1974). A party not in privity with the plaintiff may be held liable for negligent misrepresentation. *See Costa v. Neimon,* 123 Wis. 2d 410, 413, 366 N.W.2d 896, 899 (Ct. App. 1985).

We believe that, from the evidence produced at trial, a jury could have found that A.O. Smith provided Heart O'Wisconsin with documents containing erroneous statements and that it was foreseeable that prospective buyers of the Harvestore system might rely on the statements to their detriment. In addition, sufficient evidence was produced so that the question of whether plaintiffs' reliance caused their alleged injury was one for a jury to determine. We conclude the trial court erred by directing a verdict in favor of A.O. Smith on the issue of negligent misrepresentation.

C. Jury Instructions and Special Verdict Questions

*1. The "Cause" Special Verdict Question and Jury Instructions*

Plaintiffs argue that the trial court abused its discretion by singling out the causation issue for a separate

[5]The special verdict provided in part as follows:

Question No. 1:   Did A.O. Smith . . . make any representation(s) of fact as to the design or performance or capabilities of the Harvestore haylage system?

Answer:   Yes

Question No. 2:   If you answered "yes" to Question No. 1, then answer this question:

Was such representation(s) untrue?

Answer:   Yes
   . . ..

Question No. 3:   If you answered "yes" to both Questions 1 and 2, then answer this question:
      Did [A.O. Smith] make the untrue representation(s) knowing it was untrue, or recklessly without caring whether it was true or untrue?

Answer:   Yes

Question No. 4:   If you answered "yes" to Question No. 3, then answer this question:
      Did [A.O. Smith] make the untrue representation(s) with the intent to deceive and induce the plaintiffs to act upon it?

Answer:   No

Question No. 5:   If you answered "no" to either Question No. 3 or No. 4, then answer this question:
      Did [A.O. Smith] make the untrue representation(s) as a statement based on its own personal knowledge or in circumstances in which it necessarily ought to have known the truth or untruth of such a representation?

Answer:   Yes

Question No. 6:   If you answered "yes" to Questions 1 and 2 and either 4 or 5, then answer this question:
      Did the plaintiffs believe such untrue representation(s) to be true and justifiably rely on it?

Answer:   Yes

Question No. 7:   If you answered "yes" to Question No. 6, then answer this question:

jury instructions sections 533 and 544 of the Restatement (Second) of Torts (1977) or the jury instructions set forth in Wis J I—Civil 2401 and 2402.

Trial courts have wide discretion in deciding what instructions will be given, so long as they fully and fairly inform the jury of the principles of law applicable to the particular case. *D.L. v. Huebner,* 110 Wis. 2d 581, 624, 329 N.W.2d 890, 909 (1983). We will not reverse if the instruction, as a whole, correctly states the law. *White v. Leeder,* 149 Wis. 2d 948, 954-55, 440 N.W.2d 557, 559-60 (1989). We test the prejudicial effect of an erroneous instruction by determining whether the jury was probably misled. *D.L.,* 110 Wis. 2d at 628, 329 N.W.2d at 911.

The jury instruction[6] and special verdict questions on intentional misrepresentation correctly stated the

---

*Was the untrue representation(s) of fact by [A.O. Smith] a direct cause of damage to the plaintiffs?* [Emphasis added.]

Answer: <u>No</u>

[6]The jury instructions provided in part:

Now the cause questions inquire as to whether or not there was a causal connection between any untrue representations of any person, as found by you, and any damage sustained by the plaintiffs. Notice that these questions do not act—ask about "the cause," but rather "a cause." The reason for this is that there may be more than one cause of damage. The untrue representations of one person may cause damage or the combined untrue representations of two or more persons may cause it. Before you can find that any untrue representation[ ] was caused—was a cause of any damage, you must find that the untrue representation[ ] was a substantial factor, that is, that it had a substantial influence, in producing the damage. In other words, there must be such a real, causal connection between the untrue representations and the damage that the untrue representation under consideration was a factor actually operating which had a substantial effect in producing the damage.

law. It was within the trial court's discretion to separate out the elements of a cause of action in special verdict questions rather than combine them in a single question. We find no error in the trial court's submission of Question 7 of the special verdict and the accompanying jury instructions.

### 2. Strict Responsibility For Misrepresentation Special Verdict Question

Plaintiffs contend that the trial court abused its discretion by refusing, over objection, to allow the jury to answer a special verdict question regarding strict responsibility for misrepresentation against Heart O'Wisconsin. The special verdict questions were framed so that if the jury found against Heart O'Wisconsin on the intentional misrepresentation claim, it bypassed the question on strict responsibility for misrepresentation.[7]

---

[7]The special verdict provided in part as follows:

Question No. 8:   Did Heart O'Wisconsin Harvestore Systems, Inc., make any representation(s) of fact as to the design or performance or capabilities of the Harvestore haylage system?

Answer:  Yes

Question No. 9:  If you answered "yes" to Question No. 8, then answer this question:

Was such representation(s) untrue?

Answer:  Yes

. . ..

Question No. 10:   If you answered "yes" to both Questions 8 and 9, then answer this question:
   Did Heart O'Wisconsin Harvestore Systems, Inc., make the untrue representation(s) knowing it was untrue, or recklessly without caring whether it was true or untrue?

Answer:  Yes

335

A trial court has discretion in framing the special verdict questions. *Maci v. State Farm Fire & Casualty Co.,* 105 Wis. 2d 710, 719, 314 N.W.2d 914, 919 (Ct. App. 1981). We will not reverse unless the questions do not fairly present the material issues of fact to the jury. *McKnight v. General Motors Corp.,* 143 Wis. 2d 67, 70, 420 N.W.2d 370, 371 (Ct. App. 1987).

The elements of a claim for strict responsibility for misrepresentation are: (1) that the defendant made a representation of fact; (2) that the representation was untrue; (3) that the defendant represented the fact based on his personal knowledge or was so situated that he necessarily ought to have known the truth or untruth of the statement; (4) that the defendant had an economic interest in the transaction; and (5) that the plaintiff believed such representation to be true and relied on it. *Reda v. Sincaban,* 145 Wis. 2d 266, 268–69, 426 N.W.2d 100, 102 (Ct. App. 1988); Wis J I—Civil 2402.

At trial, plaintiffs presented evidence that Heart O'Wisconsin representatives presented plaintiffs with

---

Question No. 11: If you answered "yes" to Question No. 10, then answer this question:

Did Heart O'Wisconsin Harvestore Systems, Inc., make the untrue representation(s) with the intent to deceive and induce the plaintiffs to act upon it?

Answer: <u>Yes</u>

Question No. 12: If you answered "no" to either Question No. 10 or No. 11, then answer this question:

*Did Heart O'Wisconsin Harvestore Systems, Inc.[,] make the untrue representation(s) as a statement based on its own personal knowledge or in circumstances in which it necessarily ought to have known the truth or untruth of such representation?* [Emphasis added.]

Answer: ———

336

literature containing factual inaccuracies and made numerous inaccurate statements of fact. Anitta D'Huyvetter also testified that plaintiffs relied on this information to their detriment.

At oral argument, Heart O'Wisconsin contended that its representatives, as mere salesmen of the Harvestore system, were not situated so as to have knowledge of the veracity of the statements in the A.O. Smith literature. However, this question is one of fact, which a jury should properly decide. In addition, plaintiffs' evidence also concerned inaccurate statements made by Heart O'Wisconsin salesmen, for which they could be held accountable.

We conclude that the trial court erred in submitting a verdict which did not allow the jury to reach the claim of strict responsibility for misrepresentation against Heart O'Wisconsin. Therefore, we reverse and remand with instructions that this issue be retried.

### 3. Inconsistent Jury Verdict

Plaintiffs request a new trial, contending that the answers to Questions 7 and 22 of the special verdict are inconsistent. Those questions stated:

> Question No. 7: If you answered "yes" to Question No. 6, then answer this question:
> Was the untrue representation(s) of fact by [A.O. Smith] a direct cause of damage to the plaintiffs?
>
> Answer: No
> . . ..
>
> Question No. 22: If you answered "yes" to both Questions 7 and either 14 or 20, then answer this question: .

337

Of the damage found by you in Question No. 21, what percentage thereof is a result of untrue representation(s) made by:

| | | |
|---|---|---|
| A. | [A.O. Smith]? | <u>20</u>% |
| B. | Heart O'Wisconsin? | <u>80</u>% |
| | Total | 100% |

[Emphasis in original.]

Plaintiffs contend that the findings by the jury—that A.O. Smith was not a cause of the plaintiffs' damages but that twenty percent of the damage was "a result of" action by A.O. Smith—are inconsistent.

An inconsistent verdict is one containing "jury answers which are logically repugnant to one another." *Fondell v. Lucky Stores, Inc.,* 85 Wis. 2d 220, 228, 270 N.W.2d 205, 210 (1978). An inconsistent verdict, if properly objected to and not resubmitted under direction to the jury, requires a new trial. *Westfall v. Kottke,* 110 Wis. 2d 86, 100, 328 N.W.2d 481, 489 (1983).

The prefatory language in Question 22 stated that the jury was to answer that question "[i]f [it] answered 'yes' to <u>both</u> Questions 7 and either 14 or 20." (Emphasis in original.) Because the jury answered "no" to Question 7 (causation), it erred by proceeding to answer Question 22. Defendants argue that Question 22 was therefore gratuitous and could not contribute to an inconsistent verdict.

We believe this case is controlled by *Westfall.* In that case, Westfall brought a negligence action against Kottke for damages he sustained as a result of a motor vehicle collision. *Id.* at 89, 328 N.W.2d at 484. The jury found both Westfall and Kottke negligent. However, it found Kottke's negligence was not causal. *Id.* at 91, 328 N.W.2d at 485.

338

The special verdict questions instructed that if the jury found that either Westfall or Kottke's negligence was not the cause of the accident, it was not to answer the comparative negligence question.[8] Nevertheless, the jury answered the question and apportioned ninety percent of the negligence to Westfall and ten percent of the negligence to Kottke. *Id.* at 91, 328 N.W.2d at 485.

The trial court changed the jury's answer concerning Kottke's causal negligence from "no" to "yes." *Id.* at 92, 328 N.W.2d at 485. Reversing and remanding the case for a new trial, the court held:

> [W]e conclude and hold that the inconsistency on the face of the verdict was irreconcilable, that having submitted the question of negligence in respect to both parties to the jury, it was inappropriate as a matter of hindsight to resolve the question of negligence or of cause in respect to either party as a matter of law.

*Id.* at 100, 328 N.W.2d at 489.

In this case, the jury affirmatively responded to strict responsibility for misrepresentation[9] special verdict questions asking: (1) whether A.O. Smith made untrue representations of fact concerning the Harvestore system; (2) whether A.O. Smith had made the untrue representations based on its own personal knowledge or

---

[8]The jury in *Westfall* was specifically instructed not to answer the comparative negligence question "unless [it] first [found] that more than one person was negligent and that the negligence of more than one person was the cause of the accident." *Id.* at 93, 328 N.W.2d at 486.

[9]The jury answered "no" to the intentional misrepresentation special verdict question asking whether A.O. Smith made "the untrue representation(s) with the intent to deceive and induce the plaintiffs to act upon it."

in circumstances in which it necessarily ought to have known the truth or untruth of the representations; and (3) whether the plaintiffs believed the untrue representations and justifiably relied on them. *See Reda,* 145 Wis. 2d at 268–69, 426 N.W.2d at 102.

The jury found A.O. Smith not causally responsible for the plaintiffs' damages, yet attributed to them responsibility for twenty percent of the damages. These findings are patently inconsistent. We conclude the plaintiffs are entitled to a new trial against A.O. Smith on the strict responsibility for misrepresentation claim.[10]

### D. Evidence Regarding Future Losses

Plaintiffs contend the trial court abused its discretion by refusing to admit expert testimony calculating the damages incurred by plaintiffs because the Harvestore failed to perform as represented. The expert would have testified that plaintiffs would have suffered $313,652 in damages by the year 2006 because of the failure of the Harvestore to cause the predicted increases in milk production.

The measure of damages in intentional misrepresentation is the "loss of bargain" plus consequential damages. The false representation upon which the damages are based generally must relate to pre-existing facts

---

[10]A.O. Smith contended at a post-trial hearing that *Westfall* was only applicable in cases where negligence had to be apportioned. We note that the supreme court has applied *Westfall* to cases involving other causes of actions. *See Maleki v. Fine-Lando Clinic Chartered, S.C.,* 162 Wis. 2d 73, 83, 469 N.W.2d 629, 633 (1991) (conspiracy); *Imark Indus., Inc. v. Arthur Young & Co.,* 148 Wis. 2d 605, 623–25, 436 N.W.2d 311, 318–20 (1989) (intentional misrepresentation and negligence).

or events, rather than unfulfilled promises or predictions. *Hartwig v. Bitter,* 29 Wis. 2d 653, 656, 139 N.W.2d 644, 646 (1966). The expert testimony concerned predictions of Heart O'Wisconsin salesmen. We conclude the trial court did not abuse its discretion by excluding this evidence.

## E.   Double Costs

Plaintiffs allege that the trial court erred in denying their motion for double costs pursuant to sec. 807.01(3), Stats.[11] Plaintiffs made an offer of settlement jointly to all five original defendants, offering to settle the matter for $160,636. When a case involves multiple defendants on multiple theories, sec. 807.01(3) requires that separate offers of settlement be made to the defendants. *See Wilber v. Fuchs,* 158 Wis. 2d 158, 164, 461 N.W.2d 803, 805 (Ct. App. 1990); *Smith v. Keller,* 151 Wis. 2d 264, 276, 444 N.W.2d 396, 401 (Ct. App. 1989).

Plaintiffs' settlement offer did not allow each defendant to assess its potential liability from the perspective of their individual exposure, since the offer stated a single, aggregate settlement figure, for which *all* claims

---

[11]Section 807.01(3), Stats., provides:

> After issue is joined but at least 20 days before trial, the plaintiff may serve upon the defendant a written offer of settlement for the sum, or property, or to the effect therein specified, with costs. If the defendant accepts the offer and serves notice thereof in writing, before trial and within 10 days after receipt of the offer, the defendant may file the offer, with proof of service of the notice of acceptance, with the clerk of court. If notice of acceptance is not given, the offer cannot be given as evidence nor mentioned on the trial. If the offer of settlement is not accepted and the plaintiff recovers a more favorable judgment, the plaintiff shall recover double the amount of the taxable costs.

would be settled. The trial judge properly denied plaintiffs' motion for double costs, pursuant to sec. 807.01(3), Stats.

## V. SUMMARY

In summary, we affirm in part, reverse in part and remand with directions that the following issues be retried: (1) the liability of Heart O'Wisconsin and A.O. Smith for strict responsibility for misrepresentation; (2) the liability of A.O. Smith for negligent misrepresentation; and (3) the consequential damages incurred by plaintiffs. We also direct the trial court to reduce the award for "loss of bargain" damages to $65,167.

*By the Court.*—Judgments and orders affirmed in part, reversed in part and cause remanded with directions.