Cary N. KAIN, Plaintiff-Appellant,

v.

BLUEMOUND EAST INDUSTRIAL PARK, INC. and Robert A. Johnson, Defendants-Respondents,

MASON BUILDING SYSTEMS, INC., Third-Party Defendant,

AMERICAN FAMILY MUTUAL INSURANCE COMPANY, Intervenor.

Court of Appeals

*No. 00–2250. Submitted on briefs August 3, 2001.—Decided September 12, 2001.*

2001 WI App 230

(Also reported in 635 N.W.2d 640.)

On behalf of the plaintiff-appellant, the cause was submitted on the briefs of *Sean Lanphier, Gordon P. Giampietro* and *David A. Krutz* of *Michael, Best & Friedrich LLP* of Milwaukee.

On behalf of the defendants-respondents, the cause was submitted on the brief of *W. Wayne Siesennop* and *Mary Susan Maloney* of *Hannon, Siesennop & Sullivan* of Milwaukee.

Before Nettesheim, P.J., Brown and Snyder, JJ.

¶ 1. NETTESHEIM, P.J. Cary N. Kain appeals from a trial court judgment dismissing his claims against Bluemound East Indust rial Park, Inc., and denying various posttrial motions. Kain's appellate issues include the following: (1) the trial court erroneously determined that his false advertising claim is barred by the statute of limitations, (2) the trial court erred in dismissing his breach of warranty claim following his case-in-chief due to insufficient evidence, (3) the trial court erred when it included a special verdict causation question relating to his misrepresentation claims, and (4) the jury's answers to the cause questions on the strict misrepresentation claim and the negligent misrepresentation claim are inconsistent.

¶ 2. We reject Kain's arguments with the exception of the breach of warranty claim. As to that claim, we conclude that Kain presented sufficient evidence in his case-in-chief to resist a motion to dismiss. We therefore reverse that portion of the judgment dismissing Kain's claim of breach of warranty and remand for a new trial. We otherwise affirm the judgment.

## *BACKGROUND*

¶ 3. On July 22, 1993, Kain purchased a vacant parcel of land from Bluemound East. The land was formerly a quarry site that had been filled and divided into thirty-five lots. Kain negotiated the purchase of one of these lots with Robert A. Johnson, the secretary and a part owner of Bluemound East. Johnson's company had quarried sand and gravel from the site of the land. During negotiations, Johnson assured Kain that the land would support a building exerting 3000 pounds per square foot (PSF). As part of his offer to purchase the vacant land, Kain included a rider containing a contingency regarding "soil suitability." The rider pro-

vided in relevant part, "This offer is contingent upon Buyer, at Buyer's expense, completing a subsoil analysis showing that the soil conditions of the subject property are sufficient and suitable to permit the construction and erection thereupon of the improvements contemplated by Buyer at Buyer's sole and absolute discretion." Bluemound East accepted that portion of Kain's rider and Kain accepted Bluemound East's counteroffer as to other terms.

¶ 4. Subsequently, at the real estate closing, Kain requested and received a handwritten note signed by the attorney for Bluemound East stating that Bluemound East "shall provide to [Kain] a written guarantee that [the land] complies with all Environmental Laws, Ordinances and Statutes, and that the soils of said lot will support construction of a building exerting 3000 lbs. per sq. ft." On July 26, 1993, Johnson signed and sent to Kain a letter stating in pertinent part:

> This letter is to confirm our conversations regarding environmental condition and soil stability of the subject premises.
>
> . . . .
>
> Bluemound East Industrial Park, Inc. hereby warrants and represents to Mr. Cary N. Kain that the soils on the subject premises will satisfactorily support a minimum of 3,000 pounds per square foot.

Shortly after the closing, Kain contracted with Mason Building Systems, Inc., for the construction of an office/warehouse on the property. The building was designed to have a soil bearing capacity of less than 3000 pounds PSF. Kain did not conduct soil borings prior to the construction of the building, instead opting to rely on more shallow "test pits."

178

¶ 5. In April 1997, Kain discovered that the southwest corner of the building had settled by approximately 1.75 inches. As a result, Kain incurred significant expenses in repairing damage to the building and preventing further settling.

¶ 6. On August 27, 1998, Kain filed this action against Bluemound East and Johnson alleging breach of warranty, and negligent and strict misrepresentation. He later amended his complaint to additionally allege false advertising pursuant to WIS. STAT. § 100.18 (1999–2000).[1] Bluemound East denied Kain's allegations of breach of warranty and misrepresentation and asserted that "the proximate cause of any damage to the plaintiff as alleged or otherwise was caused and contributed to by the failure of the plaintiff to exercise ordinary care in having his building designed and constructed." Bluemound East also alleged that Kain's false advertising claim was barred by the statute of limitations. Bluemound East later filed a motion to dismiss Kain's false advertising claim. The court granted Bluemound East's motion on June 15, 1999, following a hearing on the issue.

¶ 7. The remaining claims proceeded to jury trial. At the close of Kain's case, the trial court granted Bluemound East's motion to dismiss Kain's breach of warranty claim based on its determination that there was "no evidence put forth by the plaintiff to indicate that the soils . . . did not satisfactorily support a minimum of 3,000 pounds per square foot." The court additionally dismissed Kain's misrepresentation claims against Johnson personally. The court ruled that

---

[1] All references to the Wisconsin Statutes are to the 1999–2000 version.

Johnson was acting as a corporate officer at all times during the sale of the property.

¶ 8. At the close of the evidence, Kain's claims of strict misrepresentation and negligent misrepresentation went to the jury. Kain and Bluemound East disagreed as to whether questions of causation should be included on the special verdict form. The court granted Bluemound East's request to include causation questions. As to strict misrepresentation, the jury found that Bluemound East had made an untrue representation that the soils would support the building. However, the jury further found that the untrue representation was not a cause of damage to Kain. As to negligent misrepresentation, the jury found that Bluemound East was negligent in making the representation that the soil would support construction of a building exerting 3000 pounds PSF. But unlike the strict misrepresentation claim, the jury then found that Bluemound East's negligence was a cause of Kain's damage. However, the jury further determined that Kain's contributory negligence exceeded Bluemound East's negligence. The jury determined that Kain's damages were $262,150.

¶ 9. Both Kain and Bluemound East filed postverdict motions. Kain moved the trial court for a judgment notwithstanding the verdict as to his breach of warranty claim, for a change of certain answers in the special verdict and, alternatively, for a new trial due to an inconsistent verdict. Bluemound East requested in part that the court dismiss Kain's claims of strict and negligent misrepresentation as a matter of law because the damages were barred under the economic loss doctrine.

¶ 10. Following the hearing on the postverdict motions, the trial court issued a written order denying Kain's postverdict motions and granting Bluemound

East's motion to dismiss Kain's misrepresentation claims on the grounds that the claims are precluded by the economic loss doctrine.

¶ 11. Kain appeals.

## DISCUSSION

### 1. False Advertising Claim

¶ 12. The trial court dismissed Kain's false advertising claim prior to trial based on its determination that it was time barred pursuant to Wis. Stat. § 100.18. Kain argues that the trial court erroneously determined that the time limits of § 100.18 ran from the date of the alleged false advertising in June 1993, as opposed to the date of Kain's pecuniary loss in April 1997. Whether the trial court properly applied the time provisions of § 100.18 to the facts of this case presents a question of law that we review without deference to the conclusion of the trial court. *Tomczak v. Bailey*, 218 Wis. 2d 245, 252, 578 N.W.2d 166 (1998).

¶ 13. Wisconsin Stat. § 100.18 governs claims of fraudulent representation in advertising. Relevant to this action, it prohibits an entity, including a corporation, from making any assertion, representation or statement of fact which is untrue, deceptive or misleading in an effort to induce the sale of real estate. Sec. 100.18(1). With respect to the time limits for bringing an action for fraudulent representation, § 100.18(11)(b)3 provides, "No action may be commenced under this section more than 3 years after the occurrence of the unlawful act or practice which is the subject of the action."

¶ 14. The issue is whether Wis. Stat. § 100.18(11)(b)3 is a statute of limitations or a

181

statute of repose. Under a statute of repose, "a cause of action must be commenced within a specified amount of time after the defendant's action which allegedly led to injury, *regardless of whether the plaintiff has discovered the injury or wrongdoing.*" *Tomczak*, 218 Wis. 2d at 252 (emphasis added). A statute of limitations bars an action not commenced within a specified amount of time after the cause of action "accrues." *Id.* In a statute of repose, the legislature has already determined when the claim "accrues"—at the time of the defendant's action. *Id.* at 254.

¶ 15. In *Tomczak*, the statute, Wis. Stat. § 893.37, barred the bringing of an action against an engineer or land surveyor "more than 6 years after the completion of a survey." *Tomczak*, 218 Wis. 2d at 248 n.1. The supreme court held that the statute was one of repose. *Id.* at 252. Except for the subject matter (surveyors) and the time period (six years), the fraudulent advertising in this case mirrors the survey statute in *Tomczak*. Wisconsin Stat. § 100.18(11)(b)3 bars suit for fraudulent representation brought "more than 3 years after the occurrence of the unlawful act or practice which is the subject of the action." Therefore, the fraudulent representation statute is a statute of repose.

¶ 16. In this case, the alleged unlawful act took place when Bluemound East provided Kain with the representation that the soil would support a building exerting 3000 pounds PSF in June 1993. Therefore, Kain's action was untimely since it was brought more than three years after the alleged fraudulent representation in June 1993.

¶ 17. While Kain does not dispute that the unlawful act occurred during the negotiations for the sale of the property in June 1993, he urges this court to

construe the time limitations of Wɪs. STAT. § 100.18(11)(b)3 as commencing at the time of injury in April 1997. Kain argues that statutes of repose such as that set forth in § 100.18(11)(b)3 are disfavored in Wisconsin and that the legislature could not have intended to protect false advertisers who could hide the falsity of their representations for more than three years. However, the language of § 100.18(11)(b)3 is clear. Kain's cause of action "accrued" at the time of the false representation in June 1993 and not at the time of injury.

¶ 18. Wisconsin courts have traditionally held that time limitation statutes are policy considerations and have been unwilling to change the legislature's decision on such limitation periods. *Tomczak*, 218 Wis. 2d at 254. Likewise, we decline Kain's invitation to change the legislature's decision as to the time limitations set forth in Wɪs. STAT. § 100.18(11)(b)3. Kain's remedy is with the legislature, not with the courts.

¶ 19. Because we conclude that Wɪs. STAT. § 100.18 is a statute of repose and not a statute of limitations, we uphold the trial court's dismissal of Kain's claim of false advertising as time barred.

## 2. Breach of Warranty Claim

¶ 20. At the close of Kain's case, Bluemound East moved for the dismissal of Kain's breach of warranty claim due to insufficient evidence. The trial court granted Bluemound East's motion, stating, "there is no evidence to show pursuant to the warranty that was given to Mr. Kain that the soils on these premises did not satisfactorily support a minimum of 3,000 pounds per square foot."

■■■■

¶ 21. We review a trial court's decision to grant a defendant's motion to dismiss for insufficient evidence at the close of plaintiff's case on a de novo basis. *Am. Family Mut. Ins. v. Dobrzynski*, 88 Wis. 2d 617, 624, 277 N.W.2d 749 (1979). The trial court may grant a motion to dismiss for insufficient evidence at the close of plaintiff's case only if "the court is satisfied that, considering all credible evidence in the light most favorable to the party against whom the motion is made, there is no credible evidence to sustain a finding in favor of such a party." *Weiss v. United Fire & Cas. Co.*, 197 Wis. 2d 365, 388, 541 N.W.2d 753 (1995) (citation omitted). When ruling on a motion to dismiss, the trial court should consider only the proof that the plaintiff has offered before resting its case. *Beacon Bowl, Inc. v. Wis. Elec. Power Co.*, 176 Wis. 2d 740, 788, 501 N.W.2d 788 (1993). Our review on appeal is the same as that conducted by the trial court. *See Weiss*, 197 Wis. 2d at 389–90.

■■■■

¶ 22. "A 'warranty' is an assurance by one party to a contract of the existence of a fact upon which the other party may rely. It is intended to relieve the promisee of any duty to ascertain the fact for himself, and amounts to a promise to indemnify the promisee for any loss if the fact warranted proves untrue." *Micro-Managers, Inc. v. Gregory*, 147 Wis. 2d 500, 511, 434 N.W.2d 97 (Ct. App. 1988) (citation omitted).

¶ 23. Bluemound East concedes that Johnson provided Kain with a warranty in his correspondence dated July 26, 1993, in which Johnson stated, "Bluemound East . . . hereby warrants and represents to Mr. Cary N. Kain that the soils on the subject premises will satisfactorily support a minimum of 3,000 pounds per

square foot." However, Bluemound contends that the trial court properly dismissed Kain's claim because there was no evidence that the warranty was not true at the time it was made.

¶ 24. We reject Bluemound East's contention that the warranty's application is limited to the time it was made and does not warranty the land subsequent to Kain's constructing a building upon it. The language of the warranty itself looks to the future. It states that the land "will" support a minimum of 3000 pounds PSF. We construe the warranty to have a prospective application.

¶ 25. Next, we look to the evidence on this question. Bluemound East's affirmative defense to Kain's breach of warranty claim was that Kain's construction of the building and reconfiguration of the land surface, not the underlying soil layers, caused the building to settle. Bluemound East argues that its expert, William Painter, presented testimony that the cause of the settling was the storm water runoff that was improperly controlled. It also points to testimony that the settling was due to Kain's failure to construct a storm sewer system.

¶ 26. At times, Bluemound East's appellate argument strays into evidence presented *after* the trial court had dismissed the breach of warranty claim at the close of Kain's case. However, we must bear in mind that our consideration of the evidence on this question is necessarily limited to that presented by Kain in his case-in-chief. *Beacon Bowl*, 176 Wis. 2d at 788. Viewed in that light, we conclude that Kain presented sufficient credible evidence to resist a motion to dismiss.

¶ 27. Gary Kretchmer, the architect who designed Kain's office building, testified in detail as to the construction of the building and as to the fact that the building exerts less than 3000 pounds PSF. Michael Marlin, the geotechnical engineer and soil engineer who worked on the building, testified that prior to constructing the building in 1993, he dug four "test pits to check the subsurface soil." The test pits located at the corners of the proposed building site were approximately nine feet deep. The soil tested was hard and compact. Later, when the building began to settle, Marlin conducted deeper soil borings, which examined each layer of soil under the building to approximately twenty to thirty feet of depth. His conclusion based on the soil borings was that a "loose layer [between thirteen and twenty-one feet] was consolidating, and this was the reason that the building above it was settling." As for Bluemound East's theory that water problems caused by Kain's reconfiguration of the land caused the consolidation, Marlin testified that the soil borings nearest the southwest corner of the building did not indicate the presence of groundwater.

¶ 28. Marlin additionally testified regarding a letter he wrote in February 1998 regarding the settling of the building's southwest corner. He stated, "The water encountered in the test pit around the footing [of the building] was perched[,] indicating the upper fill layer is relatively impermeable." Therefore, the runoff water could not really "percolate" to a deeper level and would not be "getting down to the loose layer of fill." He also testified that he stated in his letter, "[b]ased on these observations, we believe that the water trapped around the building foundation is not weakening the dense, hard upper fill layer and thus is not affecting the building settlement" but that "[b]ased on the soil bor-

ings, test pit, and settlement records, it is our opinion that the ten-foot thick loose / stiff fill layer below a depth of approximately ten feet is consolidating."

¶ 29. In Marlin's opinion, the fill had not been placed and compacted properly. Had it been, the building would not have settled. Marlin explained, "Soil is typically placed in level lifts of . . . eight to twelve inches, and compacted with, say, a large vibratory roller running over the fill several times compacting it." According to Marlin, if the soil had been compacted properly, even if there was water running through it, the water should not have caused the settling.

¶ 30. Finally, Ellis Mason, the owner of the company that built Kain's office building, testified that his understanding is that the soil borings determined that the soil is not good between the depth of eleven and twenty feet.

¶ 31. Thus, the sum of this evidence at the close of Kain's case-in-chief was the following. Kain was the beneficiary of Bluemound East's warranty that the soils would support "a minimum of 3,000 pounds per square foot." The building constructed for Kain exerted less than 3000 pounds per square foot. The soil borings revealed loose layers of the soils at depths between thirteen to twenty-one feet. This soil was consolidating which caused the building to settle. And, as to Bluemound East's affirmative defense, water would not cause the building to settle if the soil had been properly compacted.

¶ 32. In order to uphold the trial court's dismissal of Kain's breach of warranty claim for insufficient evidence, we must determine that there is no credible evidence to sustain a finding in Kain's favor. *Weiss*, 197 Wis. 2d at 388. Based upon our review of the evidence presented by Kain, we cannot make such a determina-

tion. We therefore conclude that the trial court erroneously dismissed Kain's breach of warranty claim.

### 3. Misrepresentation Claims

#### a. The Cause Questions

¶ 33. Kain brought claims of strict responsibility misrepresentation and negligent representation against Bluemound East. In its special verdict, the jury determined that Bluemound East committed both strict responsibility misrepresentation and negligent misrepresentation. However, the jury's answer as to cause differed on each claim. As to strict misrepresentation, the jury determined that Bluemound East's misrepresentation did not cause Kain's damages. As to negligent misrepresentation, the jury determined that Bluemound East's misrepresentation did cause Kain's damages. The jury then determined that Kain was 62.5% contributorily negligent.

¶ 34. Kain contends that it was error for the trial court to submit a cause question to the jury on the misrepresentation claims. Kain additionally argues that the jury's response to the cause questions rendered the verdict inconsistent.

¶ 35. In support of his argument that the trial court erroneously submitted a cause question to the jury, Kain correctly notes that neither the standard jury instruction nor the suggested verdict forms contain a question as to cause. See Wis JI—Civil 2400–03. He reasons that the reliance inquiry in a negligent misrepresentation claim is the equivalent of the causation element in a negligence claim. *Ramsden v. Farm Credit Servs.*, 223 Wis. 2d 704, 721, 590 N.W.2d 1 (Ct. App. 1998). Kain argues that the inclusion of the causation

questions on the special verdict form was legally unnecessary and confusing to the jury.

¶ 36. A trial court has discretion in framing a special verdict and we will not disturb the trial court's ruling if the material issues of fact in the case are addressed. *Maci v. State Farm Fire & Cas. Co.*, 105 Wis. 2d 710, 719, 314 N.W.2d 914 (Ct. App. 1981). Here, the trial court determined that a question as to cause was necessary.

¶ 37. Bluemound East argues that our holding in *D'Huyvetter v. A.O. Smith Harvestore Prods.*, 164 Wis. 2d 306, 475 N.W.2d 587 (Ct. App. 1991), supports the trial court's ruling. There, the special verdict involved a claim of intentional misrepresentation. Like Kain, the plaintiffs in *D'Huyvetter* argued that the trial court erred in singling out the causation issue for a separate special verdict question. We upheld the trial court's determination, finding no error in the trial court's submission of a cause question on a claim of misrepresentation. *Id.* at 335. Kain distinguishes *D'Huyvetter* on the basis that it involved two defendants who allegedly made misrepresentations whereas here there is only one. *Id.* at 318. While the distinction Kain notes is correct, he overlooks that in this case there was a sharp dispute between the parties as to what caused the building to settle—the condition of the subsoils or Kain's reconfiguration of the land surface as part of the building construction. Given that factual dispute, we see no erroneous exercise of discretion by the trial court in choosing to put the cause question squarely to the jury.

¶ 38. Alternatively, Kain contends that our decision in *D'Huyvetter* is wrong. Whether or not he is correct, we are nevertheless bound by it. *Cook v. Cook*, 208 Wis. 2d 166, 190, 560 N.W.2d 246 (1997).

¶ 39. For the foregoing reasons, we conclude that the trial court did not err in submitting a cause question to the jury on the special verdict form.

## b. Inconsistent Verdict

¶ 40. Kain contends that the jury's differing responses to the cause questions on the claims of strict responsibility misrepresentation and negligent misrepresentation render the verdict inconsistent. An inconsistent verdict is one in which the jury's answers are "logically repugnant to one another." *Fondell v. Lucky Stores, Inc.*, 85 Wis. 2d 220, 228, 270 N.W.2d 205 (1978).

¶ 41. Here, with respect to Kain's claim of strict responsibility misrepresentation, the jury found Bluemound East's misrepresentation was not a cause of Kain's damages. However, on Kain's claim of negligent misrepresentation, the jury found that Bluemound East's misrepresentation was a cause of Kain's damages but that Kain was 62.5% contributorily negligent. In making his argument, Kain overlooks that the claims of strict responsibility misrepresentation and negligent misrepresentation impose differing burdens of proof as to liability.

¶ 42. The burden of proof for a claim of negligent misrepresentation carries an ordinary burden of proof which requires the plaintiff to satisfy the jury "to a

reasonable certainty by the greater weight of the credible evidence." Wɪs JI—Cɪᴠɪʟ 200, 2403 (comment). By contrast, the burden of proof for a claim of strict responsibility misrepresentation is the middle burden, which requires the plaintiff to convince the jury "to a reasonable certainty by evidence that is clear, satisfactory, and convincing." Wɪs JI—Cɪᴠɪʟ 205, 2402 (comment). The evidence required to meet the middle burden "must be more convincing than merely the greater weight of the credible evidence but less than beyond a reasonable doubt." Wɪs JI—Cɪᴠɪʟ 205.

¶ 43. In reviewing a jury's verdict, we presume that the jury followed the law. *Frayer v. Lovell*, 190 Wis. 2d 794, 812, 529 N.W.2d 236 (Ct. App. 1995). Here, we conclude that the jury's differing responses as to whether Bluemound East's misrepresentation was a cause of damage is explained by the differing burdens of proof. Therefore the verdict is not inconsistent.[2]

¶ 44. Because we uphold the jury's verdict rejecting Kain's claims of misrepresentation, we need not address his further arguments that the trial court erroneously dismissed his misrepresentation claim against Johnson in his individual capacity and that the trial court erroneously dismissed his misrepresentation

---

[2] We also reject Kain's argument that the jury's verdict is a "compromise" because it expressed its percentage breakdown as to comparative negligence down to one-half of one percent. (The jury found that Kain was 62.5% contributorily negligent.) Kain contends that the jury most likely added up each juror's assessment of negligence and divided by twelve. Kain's argument is sheer speculation. In the absence of any other evidence of a compromise verdict, we must reject Kain's argument.

claims based on the economic loss doctrine. *See Sweet v. Berge*, 113 Wis. 2d 61, 67, 334 N.W.2d 559 (Ct. App. 1983).

## *CONCLUSION*

¶ 45. We conclude that the trial court properly determined that Kain's claim of false advertising was time barred by Wis. Stat. § 100.18(11)(b)3. We further conclude that the trial court did not err in submitting a cause question to the jury on Kain's claims of misrepresentation. Finally, we conclude that Kain presented sufficient credible evidence to resist Bluemound East's motion to dismiss the breach of warranty claim at the close of the case-in-chief. We reverse that portion of the judgment dismissing Kain's claim of breach of warranty and remand for further proceedings. In all other respects, we affirm the judgment.

¶ 46. No costs to either party.

*By the Court.*—Judgment affirmed in part; reversed in part and cause remanded.