METAL PROCESSING COMPANY, INC., Plaintiff,

v.

AMOCO OIL CO., Defendant.

No. 95–C–1056.

United States District Court, E.D. Wisconsin.

April 2, 1996.

Hale & Lein by Russell M. Lein and Lynne M. Mueller, Milwaukee, WI, for Plaintiff.

Gonzalez, Saggio, Birdsall & Harlan by Dennis M. Grzezinski & Jennifer A. Pflug, Milwaukee, WI, for Defendant.

## DECISION and ORDER

MYRON L. GORDON, District Judge.

On October 18, 1995, Metal Processing Company, Inc. ["Metal Processing"] filed the above-captioned action against Amoco Oil Co. ["Amoco"]. In its initial complaint, Metal Processing asserted claims under the Comprehensive Environmental Response, Compensation and Liability Act ["CERCLA"], 42 U.S.C. §§ 9601 *et seq.* and, in addition, state law claims for negligence, strict liability, nuisance and trespass. The plaintiff subsequently filed an amended complaint asserting an additional claim under the Resource Conservation and Recovery Act ["RCRA"], 42 U.S.C. §§ 6972 *et seq.* Jurisdiction is based on 28 U.S.C. §§ 1331 and 1367. Presently before the court is the defendant's motion to dismiss counts one, two, four, five, six and seven of the plaintiff's amended complaint pursuant to Rule 12(b)(6), Federal Rules of Civil Procedure.

The defendant previously filed a motion to dismiss the plaintiff's initial complaint. However, the plaintiff's filing of an amended complaint has rendered that motion moot.

### I. BACKGROUND

The following facts are taken from the plaintiff's amended complaint. Metal Processing is a Wisconsin corporation with its principal place of business located in Milwaukee. Amoco is a foreign corporation with its principal place of business in Chicago.

In 1935, Standard Oil Co., now known as Amoco, purchased property located at 3148 West Auer Avenue in Milwaukee. Amoco constructed a building on the property and

installed tanks for the storage of lubricating oils. While it owned the Auer property, Amoco was required by the City of Milwaukee to repair leaks to tanks located on the property; these tanks were used for storing fuel oil and kerosene.

Amoco maintained operations at the Auer site until June 1967, when Metal Processing leased the property. The plaintiff purchased the premises from Amoco in October 1967. Amoco removed the bulk storage tanks from the premises before Metal Processing purchased the property. However, the defendant left five underground storage tanks on the premises.

In 1990, the plaintiff decided to remove the underground storage tanks which had been left on the Auer property by Amoco. During the removal of the tanks, contamination was found on the premises. Metal Processing claims that it has determined that the area in which Amoco formerly operated the above-ground storage tanks has been contaminated with substances which include vinyl chlorides. Metal Processing contends that laboratory tests of soil and water from the premises have revealed the presence of hazardous substances, as defined in § 101(14) of CERCLA, 42 U.S.C. § 9601(14), and that the hazardous substances located on the premises were deposited there by Amoco.

The plaintiff maintains that the defendant was the owner and operator of the property at the time substances were released on the property. As a result, Metal Processing asserts that Amoco is liable under CERCLA § 107(a), 42 U.S.C. § 9607(a), for the necessary response costs that the plaintiff has incurred and will incur due to the actual or threatened release of hazardous substances on the premises. The plaintiff also seeks contribution under CERCLA § 113(f), 42 U.S.C. § 9613(f) for all costs that the plaintiff has incurred or will incur in responding to the actual or threatened release of hazardous substances on the premises. In addition, Metal Processing maintains that the defendant is liable under RCRA § 7002(a)(1)(B) as "a past generator and past owner of a storage facility that contributed to the past disposal of hazardous waste" which presents an imminent and substantial danger to health or the environment.

For its first state law claim, the plaintiff alleges that Amoco was negligent in its storage, handling, use and disposal of hazardous substances on the Auer property. Metal Processing charges that the defendant's failure to exercise ordinary care in its handling of hazardous substances on the property resulted in the release or discharge of such substances into the property, thereby harming the plaintiff as the current owner of the property.

Metal Processing also claims that the defendant's use, handling, storage and disposal of hazardous substances on the property was an unreasonably dangerous activity. The plaintiff maintains that, at the time the hazardous substances left the control of the defendant, inadequate safeguards were in place to prevent the migration of the substances.

The plaintiff further complains that, by allowing the release of hazardous substances onto the property, the defendant created a continuing nuisance. As its fourth state law claim, Metal Processing alleges that the defendant's release of hazardous substances onto the property and refusal to remove such substances creates a continuing trespass on the plaintiff's property.

## II. ANALYSIS

The defendant asserts that counts one, two, four, five six and seven of the plaintiff's amended complaint should be dismissed under Rule 12(b)(6) because: (1) with respect to its claims under CERCLA, the plaintiff failed to plead an element essential for recovery under CERCLA § 107(a), 42 U.S.C. § 9607(a); (2) each of the plaintiff's state law tort claims seeks only economic damages, which are recoverable only under contract theories; (3) the allegations of the plaintiff's complaint show that its state law claims are barred by the applicable statute of limitations; and (4) the facts which the plaintiff has alleged in asserting its state law claims do not entitle it to relief.

In ruling on a motion under Rule 12(b)(6), the court must accept as true the well-pleaded allegations of the plaintiff's com-

plaint. *Gomez v. Illinois State Board of Education*, 811 F.2d 1030, 1039 (7th Cir. 1987). The court must view those allegations in the light most favorable to the plaintiff. *Id.* The complaint should be dismissed only if it appears beyond doubt that the plaintiff could prove no set of facts entitling him to relief. *Triad Associates, Inc. v. Chicago Housing Authority*, 892 F.2d 583, 586 (7th Cir.1989), *cert. denied*, 498 U.S. 845, 111 S.Ct. 129, 112 L.Ed.2d 97 (1990). "The purpose of a motion to dismiss is to test the sufficiency of the complaint, not to decide the merits." *Id.*

## A. CERCLA CLAIMS

Amoco asserts that the plaintiff has not alleged that it has incurred any response costs consistent with the national contingency plan ["NCP"]. The defendant argues that the plaintiff's complaint "must specify at least one cognizable response cost consistent with the NCP incurred by the plaintiff prior to filing suit" in order to state a claim for relief under § 9607(a).

■ Rule 8(a)(2), Federal Rules of Civil Procedure, requires only "a short and plain statement of the claim showing that the pleader is entitled to relief." Pursuant to Rule 8, the complaint should contain allegations sufficient to enable the court or an opposing party to " 'understand whether a valid claim is alleged and if so what it is.' " *Wade v. Hopper*, 993 F.2d 1246, 1249 (7th Cir.) (citations omitted), *cert. denied*, 510 U.S. 868, 114 S.Ct. 193, 126 L.Ed.2d 151 (1993).

To state a claim under § 9607 a plaintiff must allege: (1) the site in question is a facility as that term is defined in 42 U.S.C. § 9601(9); (2) the defendant is a responsible party under § 9607(a); (3) a release or threatened release of a hazardous substance from the facility has occurred; and (4) the release or threatened release has caused the plaintiff to incur response costs. *See Environmental Transportation Systems, Inc. v. ENSCO, Inc.*, 969 F.2d 503, 506 (7th Cir. 1992); *Powell Duffryn Terminals v. CJR Processing*, 808 F.Supp. 652, 654 (N.D.Ill. 1992). Section 9607 governs liability while § 9613(f)(1) provides a mechanism for apportioning that liability among responsible parties. *Town of Munster, Indiana v. Sherwin–Williams Co., Inc.*, 27 F.3d 1268, 1270 (7th Cir.1994).

■ Contrary to the defendant's assertion, I do not believe that the plaintiff is obligated to state that the response costs which it has incurred were consistent with the NCP. Metal Processing does allege that Amoco is liable for "the necessary response costs plaintiff has incurred as a result of the actual release of hazardous substances at the premises." In addition, the plaintiff alleges that it has incurred response costs in the form of "costs for testing the property, analysis, and installation of monitoring wells on the property."

With respect to its claims under CERCLA, the plaintiff alleges that (1) hazardous substances, as defined in 42 U.S.C. § 9601(14), were deposited on the plaintiff's property by Amoco; (2) the plaintiff is a person as defined in 42 U.S.C. § 9601(21); (3) the defendant is a person as defined in 42 U.S.C. § 9601(21); (4) the premises at issue constitute a facility as defined in 42 U.S.C. § 9601(9); (5) there has been a "release" or "threatened release" or discharge of hazardous substances, as those terms are defined in 42 U.S.C. § 9601(22); (6) as a prior owner or operator of the premises, Amoco is a responsible party for the release and threatened release of hazardous substances under 42 U.S.C. §§ 9607(a) and 9613(f); (7) the defendant is liable for the necessary response costs which Metal Processing has incurred as well as those costs which the plaintiff may incur in the future under 42 U.S.C. § 9607(a); and (8) the defendant is liable for all the costs of responding to the actual or threatened release of hazardous substances on the premises as well as all such costs incurred in the future under 42 U.S.C. § 9613(f).

In my opinion, the facts alleged by Metal Processing in its amended complaint are adequate to state a claim for relief against the defendant under CERCLA. While the plaintiff may be required to prove that its response costs are consistent with the NCP in order to establish liability, I do not believe

that the plaintiff is required specifically to plead such facts in its complaint in order to state a valid claim under § 9607(a).

## B. STATE LAW CLAIMS

As noted above, Amoco asserts that the plaintiff's state law claims are deficient in three respects: (1) the plaintiff's state law claims, which are grounded in tort, seek recovery of "economic damages," which damages are only recoverable under contract theories; (2) the plaintiff's state law claims are time-barred under the applicable statute of limitations; and (3) the facts pled by the plaintiff on its state law claims do not entitle the plaintiff to relief.

### 1. Economic Damages

The defendant maintains that "economic losses" are not recoverable in tort under Wisconsin law. In response, the plaintiff argues that the economic loss doctrine does not apply to a real estate transaction, such as the one involved in this case.

■ Under the economic loss doctrine, a commercial purchaser of a product cannot recover economic losses from the manufacturer under negligence or strict liability theories. *Sunnyslope Grading, Inc. v. Miller, Bradford & Risberg, Inc.,* 148 Wis.2d 910, 921, 437 N.W.2d 213 (1989). Economic loss constitutes the diminution in value of a product because it is inferior in quality and does not work for the general purposes for which it was manufactured and sold. *Northridge Co. v. W.R. Grace & Co.,* 162 Wis.2d 918, 925–26, 471 N.W.2d 179 (1991). Under the economic loss doctrine, Wisconsin does not permit a tort cause of action for economic injury alone where the parties have a contractual relationship and the injury is based on that relationship. *Midwest Knitting Mills, Inc. v. United States,* 950 F.2d 1295, 1300 (7th Cir.1991).

The basis for prohibiting the recovery of economic loss in cases involving a claim of a defective product is the distinction between a tort claim and a contract claim. The gist of a tort claim is that the plaintiff has suffered personal injury or harm to property other than the product itself as a result of the inferior quality of the product. *Northridge Co.,* 162 Wis.2d at 933, 471 N.W.2d 179. Tort law is concerned with safety.

In contrast, the principle of economic loss is based on contract law. *Id.* Recovery for economic loss allows purchasers to seek redress for a product which fails to work for its intended use. *Id.* Recovery for economic loss focuses on the agreement between the seller and the purchaser of a product. *Id.* Contract law is based on the protection of reasonable expectations. "The insight behind the [economic loss] doctrine is that commercial disputes ought to be resolved according to the principles of commercial law rather than according to tort principles designed for accidents that cause personal injury or property damage." *Miller v. U.S. Steel Corporation,* 902 F.2d 573, 575 (7th Cir.1990).

■ The question in the case at bar is whether the "economic loss doctrine" applies to a real estate transaction involving allegedly contaminated property. Metal Processing asserts that Wisconsin courts have only applied the economic loss doctrine in cases involving defective products.

On the other hand, the plaintiff argues that the doctrine should not be applied in this case because this case does not involve a defective product; rather, it involves allegedly contaminated property which could pose a safety threat to others. I disagree. I do not believe that this case is distinguishable from other Wisconsin cases applying the economic loss doctrine merely because the "product" in this case is land as opposed to a piece of equipment or a building. The fact that environmental contamination such as that described in the plaintiff's complaint may pose a health threat does not transpose the plaintiff's claims into tort claims absent some allegation that the alleged contamination resulted in personal injury or damage to property other than the property which was sold to the plaintiff.

Environmental contamination is a serious hazard to public health. Congress recognized that fact by enacting CERCLA and thereby creating a means by which parties could be held responsible for the release of hazardous substances into the environment.

*See Dedham Water Co. v. Cumberland Farms Dairy,* 805 F.2d 1074, 1081 (1st Cir. 1986). However, absent some allegation that Amoco's actions caused personal injury or harm to property other than the property sold by the defendant to Metal Processing, the plaintiff does not have a tort law remedy against Amoco. Therefore, the defendant's motion to dismiss counts four, five, six and seven of the plaintiff's amended complaint will be granted.

### 2. The defendant's remaining arguments

Because of my resolution of the defendant's economic loss argument in its favor, I need not address Amoco's remaining arguments that the plaintiff's tort claims are barred by the applicable statute of limitations and that the plaintiff's tort claims fail to allege facts sufficient to state claims upon which relief can be granted.

### ORDER

Therefore, IT IS ORDERED that the defendant's motion to dismiss counts one, two, four, five, six and seven of the plaintiff's amended complaint pursuant to Rule 12(b)(6), Federal Rules of Civil Procedure, be and hereby is denied in part and granted in part.

IT IS ALSO ORDERED that the defendant's motion to dismiss counts one and two of the plaintiff's amended complaint be and hereby is denied.

IT IS FURTHER ORDERED that counts four, five, six and seven of the plaintiff's amended complaint be and hereby are dismissed, without prejudice.

IT IS FURTHER ORDERED that the defendant's motion to dismiss the plaintiff's initial complaint be and hereby is denied as moot.