Terry D. Van Lare and Norman J. Wachtl,
Plaintiffs-Appellants,

v.

Vogt, Inc., Defendant-Respondent.

Supreme Court

*No. 01–3051. Oral argument March 10, 2004.—Decided
July 9, 2004.*

2004 WI 110

(Also reported in 683 N.W.2d 46.)

632

BRADLEY, J., concurs.
CROOKS, J., concurs.
WILCOX, J., joins.
SYKES, J., took no part.

For the plaintiffs-appellants there were briefs by *James W. Hammes* and *Cramer, Multhauf & Hammes, LLP,* Waukesha, and oral argument by *James W. Hammes.*

For the defendant-respondent there was a brief by *Terence P. Cahill* and *Brewer & Cahill, LLP,* Oconomowoc, and oral argument by *Terence P. Cahill.*

¶ 1. DAVID T. PROSSER, J. This case is before the court on certification by the court of appeals. The issue certified is whether the economic loss doctrine bars a claim for strict responsibility misrepresentation in a real estate transaction where the alleged misrepresentations are contained in a contract between the parties and the claimed damages are solely for pecuniary loss.

¶ 2. Consistent with our precedent and the policies underlying the economic loss doctrine, we narrow the certified question to cover *commercial* real estate transactions. We conclude that application of the economic loss doctrine bars Van Lare's claim of strict responsibility misrepresentation in a commercial real estate contract. Van Lare did not ask the jury to decide whether Vogt was guilty of intentional misrepresentation; he asked for a verdict on strict responsibility misrepresentation. Thus, Van Lare sought liability under a theory in which Vogt *could* have been one of two innocent parties to a transaction that went awry. The fact that the contract involved real estate instead of a manufacturer's "product" does not alter the outcome in this commercial case.

¶ 3. We decline Van Lare's request to order a new trial "in the interest of justice." Van Lare could have sought a remedy under alternative legal theories, but he failed to file a timely breach of contract claim and withdrew every misrepresentation claim except his claim for strict responsibility misrepresentation. Consequently, we affirm the decision of the circuit court.

## FACTUAL BACKGROUND

¶ 4. On June 22, 1993, Terry D. Van Lare and Norman J. Wachtl (Van Lare)[1] entered into a written contract with Vogt, Inc. (Vogt) to purchase a 55–acre parcel of real property in Waukesha County. The property in question was the site of a gravel pit owned and operated by Vogt. The Option to Purchase contained a clause in which Vogt warranted and represented to Van Lare that Vogt had no notice or knowledge of any:

> Underground storage tanks or any structural, mechanical, or other defect(s) of material significance affecting the property, including but not limited to inadequacy for normal use of mechanical systems, waste disposal systems and well/unsafe well water according to State standards, or the presence of any dangerous or toxic materials or conditions affecting the property. Excepting one Ready-Mix drum (filled with concrete) which may be buried on north-west corner of property to be conveyed herein.

¶ 5. The Option to Purchase also contained an "as is" provision which stated: "Upon closing, Buyer accepts this property in 'as is' condition and represents to Seller that their purchase of the property is made on the basis

---

[1] For ease of reference, we will refer to "Van Lare" in the singular. We recognize that Norman Wachtl, Van Lare's co-appellant, joins in this appeal.

636

of their own investigation and testing." Both parties to the contract were represented by counsel.

¶ 6. In September 1993 the parties amended the Option to Purchase when the parties became aware that "a certain parcel of said property . . . had previously been conveyed by Seller to another party." This discovery required a $20,000 reduction in the purchase price.

¶ 7. By November 1993 Van Lare purchased the property in accordance with the Option. The purchase price at closing was $213,000. Prior to purchasing the property, Van Lare was aware that illegal dumping of refuse had occurred on a regular basis near the entrance of the gravel pit. Despite this knowledge, the only tests Van Lare conducted prior to the closing were tests to determine if there was mineable bank-run material in the gravel pit.

¶ 8. From 1993 to 1999 Van Lare operated a landscaping business on the site and continued to excavate gravel from the pit in accordance with a conditional use permit issued by Waukesha County. In time, Van Lare submitted an application for residential development of the property. During public hearings to consider the proposed residential development, Van Lare learned that construction debris, including concrete, asphalt, fencing materials, PVC piping, pails, ropes, barrels, wood, and other types of materials had been buried on the site.

¶ 9. On April 19, 1999, before the 6–year period of limitation had run on a potential breach of contract claim, Van Lare's attorney notified Vogt of the claimed

contractual breach. *See* Wis. Stat. § 893.43.[2] The letter stated in part:

> It has now come to my clients' attention that numerous building materials and other items, including possibly oil and paints, were dumped at the site during the years of ownership by Vogt, Inc. . . .
>
> Photographs, which were taken on or about April 30, 1990 and which are contained in the files of the Waukesha County Park and Planning Commission office, reflect the nature and extent of the building materials and other items which were dumped on the property. In addition, interviews with former employees indicate conclusively that the company was aware of these activities even though they were not disclosed at the time the Offer to Purchase was executed.

¶ 10. The letter further stated that it was putting Vogt on notice that Vogt was liable for any costs and expenses that might be incurred in cleaning up the property and invited Vogt to undertake excavation or be present to observe excavation activities. Thereafter, on November 29, 1999, Van Lare commenced this action, seeking to recover costs involved in removing the buried building materials and debris from the site.

¶ 11. The Van Lare complaint asserted three causes of action: intentional misrepresentation, negligent misrepresentation, and strict liability misrepresentation. The strict liability (or strict responsibility) claim incorporated a statutory claim for fraudulent misrepresentation under Wis. Stat. § 100.18. Van Lare's

---

[2] All references to the Wisconsin Statutes are to the 2001–02 edition unless otherwise indicated.

complaint did not allege breach of contract, presumably because such a claim was now barred by Wis. Stat. § 893.43, a six-year period of limitation.

¶ 12. Prior to trial, Vogt filed a motion in limine requesting the court to allow Van Lare to submit evidence on only the intentional misrepresentation claim because, Vogt asserted, the economic loss doctrine barred recovery under the other claims. The court denied the motion but, in Van Lare's view, the court intimated that it would not submit both the intentional misrepresentation and strict liability claims to the jury.

¶ 13. At the conclusion of the trial testimony, Vogt again moved for dismissal of the strict liability claim, asserting that the economic loss doctrine barred recovery under that claim. The court denied the motion. Following that ruling, Van Lare withdrew the intentional misrepresentation claim, the negligent misrepresentation claim, and, to the extent it was a separate claim, the Wis. Stat. § 100.18 claim. Instead, Van Lare opted to submit only the strict liability claim. Acting on that theory, the jury returned a verdict in favor of Van Lare and awarded $375,000 in damages.

¶ 14. Following the verdict, Vogt moved for judgment notwithstanding the verdict on the ground that the economic loss doctrine barred Van Lare from recovering purely economic damages under a strict liability misrepresentation claim. Although the court concluded that the evidence presented was sufficient to sustain the jury's verdict, the court nonetheless granted Vogt's motion because it concluded, contrary to its earlier rulings, that Van Lare's strict liability misrepresentation claim was barred by the economic loss doctrine.

¶ 15. Van Lare appealed, and the court of appeals certified the case to this court pursuant to Wis. Stat. § (Rule) 809.61.

## ANALYSIS

A. Applicability of the Economic Loss Doctrine to Commercial Real Estate Contracts

¶ 16. The threshold issue in this case is whether the economic loss doctrine applies to commercial real estate contracts such as the Option to Purchase and resulting purchase agreement in this case.

¶ 17. The economic loss doctrine, first adopted by this court in *Sunnyslope Grading, Inc. v. Miller, Bradford & Risberg, Inc.,* 148 Wis. 2d 910, 437 N.W.2d 213 (1989), is a judicially created doctrine that seeks "(1) to maintain the fundamental distinction between tort law and contract law; (2) to protect commercial parties' freedom to allocate economic risk by contract; and (3) to encourage the party best situated to assess the risk [of] economic loss, the commercial purchaser, to assume, allocate, or insure against that risk." *Daanen & Janssen, Inc. v. Cedarapids, Inc.,* 216 Wis. 2d 395, 403, 573 N.W.2d 842 (1998).

¶ 18. The doctrine holds that a commercial purchaser of a product cannot recover solely economic losses from the manufacturer under negligence or strict liability theories, particularly where the warranty given by the manufacturer specifically precludes the recovery of such damages. *Sunnyslope,* 148 Wis. 2d at 921. We have repeated this principle on numerous occasions. *Digicorp, Inc. v. Ameritech Corp.,* 2003 WI 54, ¶ 33, 262 Wis. 2d 32, 662 N.W.2d 652; *Wausau Tile, Inc. v. County Concrete Corp.,* 226 Wis. 2d 235, 245–46, 593 N.W.2d 445 (1999); *State Farm Mut. Auto. Ins. Co. v. Ford Motor Co.,* 225 Wis. 2d 305, 315, 592 N.W.2d 201 (1999); *Daanen,* 216 Wis. 2d at 402.

¶ 19. Wisconsin courts have gradually enlarged the economic loss doctrine from its root in *Sunnyslope*. Although we defined the economic loss doctrine narrowly in *Sunnyslope,* the narrowness of the definition corresponded to the facts in that case—application of the economic loss doctrine to a product. *Daanen,* 216 Wis. 2d at 403. Earlier this term, we referred to the economic loss doctrine more broadly as "a judicially-created remedies principle that operates generally to preclude contracting parties from pursuing tort recovery for purely economic or commercial losses associated with the contract relationship." *Tietsworth v. Harley-Davidson, Inc.,* 2004 WI 32, ¶ 23, 270 Wis. 2d 146, 677 N.W.2d 233.

¶ 20. Although this court has not previously addressed the specific issue of whether the economic loss doctrine applies to commercial real estate contracts, other courts addressing the issue under Wisconsin law have concluded that it does. For instance, in *Kailin v. Armstrong,* 2002 WI App 70, 252 Wis. 2d 676, 643 N.W.2d 132, the court of appeals concluded that "[a]lthough the economic loss doctrine was developed in the context of defective product claims, it applies when real estate is the subject of the contract." *Id.,* ¶ 27; *see also Mose v. Tedco Equities—Potter Rd. Ltd. P'ship,* 228 Wis. 2d 848, 859, 598 N.W.2d 594 (Ct. App. 1999) (holding that there is no reason to forgo application of the economic loss doctrine because real estate is the "product" in question); *Metal Processing Co. v. Amoco Oil Co.,* 926 F. Supp. 828, 832 (E.D. Wis. 1996) (finding case indistinguishable from others applying the economic loss doctrine "merely because the 'product' in this case is land as opposed to a piece of equipment or a building"); *Raytheon Co. v. McGraw-Edison Co.,* 979 F. Supp. 858, 870 (E.D. Wis. 1997) (reasoning that economic loss

doctrine applies because when "two sophisticated commercial entities enter into an arms-length transaction for the sale of industrial property, there is equal bargaining strength on both sides of the table and equal opportunity to inspect the property").

¶ 21. While we do not decide today whether the broader conceptualization of the economic loss doctrine in *Tietsworth* covers all real estate transactions, we conclude that the economic loss doctrine may not be discarded simply because a transaction involves real estate. In this case, we have a written, bargained-for contract for the sale of commercial-use land between two sophisticated parties represented by counsel during the negotiation process. This is the kind of situation that is tailor made for the application of traditional contract law.

¶ 22. Van Lare is forced to base his claim on a misrepresentation theory rather than a breach of contract theory because the period of limitation on the contract claim had run. Wis. Stat. § 893.43.[3] He asserts that it should be of no consequence whether the theory of liability is based in tort or contract, provided that the misrepresentation is contained in the contractual commitment of the parties. Essentially, Van Lare argues

---

[3] Wisconsin Statute § 893.43 provides as follows:

> An action upon any contract, obligation or liability, express or implied, including an action to recover fees for professional services, except those mentioned in s. 893.40, shall be commenced within 6 years after the cause of action accrues or be barred.

The option to purchase was signed on June 22, 1993, meaning the period of limitation would have run on June 22, 1999. This action commenced on November 29, 1999.

that the economic loss doctrine bars claims arising from breach of tort duties but should not be extended to bar claims arising from breach of contractual duties.[4] He also asserts that the economic loss doctrine's intent was to limit damage claims to those damages contemplated by the parties when entering into a contract, not to prevent recovery of those damages altogether.

¶ 23. In truth, Van Lare asks us to forgo application of the economic loss doctrine to his strict liability misrepresentation claim because the normal application of the doctrine leaves him without a remedy. However, the economic loss doctrine did not necessarily preclude other claims, e.g., (1) breach of contract; (2) violation of Wis. Stat. § 100.18 (fraudulent representation); and (3) intentional misrepresentation in some form. Unfortunately, in the first two of these potential claims, the period of limitation for bringing an action expired. The intentional misrepresentation claim, which offers a narrow, still imprecise exception to the economic loss doctrine, was dropped. We cannot overrule our precedent to allow Van Lare's tort claim simply because his own action or inaction has barred other claims.

¶ 24. Contrary to Van Lare's position, applying the economic loss doctrine in this case furthers the policies that justify the doctrine's existence.

██

¶ 25. One general premise underlying the economic loss doctrine is that contract law is better suited

---

[4] In tort, a duty is put upon an individual member of the community simply because he is such a member, but, in contract, the duty comes into existence only when the duty-bearer has voluntarily undertaken to assume it. *Daanen & Janssen, Inc. v. Cedarapids, Inc.,* 216 Wis. 2d 395, 404 n.4, 573 N.W.2d 842 (1998).

to deal with purely economic loss in the commercial arena than tort law. *Daanen,* 216 Wis. 2d at 404 (citing *E. River S.S. Corp. v. Transamerica Delaval, Inc.,* 476 U.S. 858, [872] (1986)). Contract law "is designed to effectuate exchanges and to protect the expectancy interests of parties to private bargained-for agreements" and "seeks to hold commercial parties to their promises." *Id.* In contrast, tort law focuses on "protecting society as a whole from physical harm to person or property." *Id.* at 405.

¶ 26. The economic loss doctrine exists to preserve the distinction between contract and tort law. *Digicorp,* 262 Wis. 2d 32, ¶ 34. To allow tort recovery for a misrepresentation claim grounded in a bargained-for contract would blur the distinction we seek to preserve. Tort recovery in a contract case can only be justified in circumstances such as intentional misrepresentation that undermine the foundation of the economic loss doctrine.

¶ 27. Van Lare had ample opportunity to force Vogt to allocate the risk in their contract. Van Lare not only had counsel during the negotiations of the Option to Purchase, but also had the time and opportunity to investigate and test the subject property prior to closing. The economic loss doctrine encourages parties to allocate economic risks in this manner. It forces purchasers in a position to assess the risks of economic loss to insure against those risks. *Daanen,* 216 Wis. 2d at 403. If we were to allow recovery for strict liability misrepresentation in this case, we would seriously undermine a purchaser's incentive to insure against risks by bargaining for remedies. At the same time, we would impair contracting parties' freedom to allocate

644

the economic risks of the transaction by subjecting them to potential tort damages even when they agree to forgo such damages.

¶ 28. Accordingly, we discern no reason to except Van Lare's strict liability misrepresentation claim from application of the economic loss doctrine under the facts of this case. When the economic loss doctrine applies, as it does here, it bars misrepresentation claims in the absence of a recognized exception. As a result, the circuit court correctly concluded that Van Lare's strict liability misrepresentation claim is barred by the doctrine. Under existing law, there is no exception to the economic loss doctrine for strict liability misrepresentation in a purely commercial setting.

B. Exceptions to the Economic Loss Doctrine

¶ 29. Van Lare alternatively requests that we create an exception to the economic loss doctrine for strict liability misrepresentation claims when the sale of real estate is involved. In support of this request, he notes the "fraud in the inducement" exception in our case law. Van Lare adds that claims of intentional misrepresentation and strict liability misrepresentation carry a similar burden of proof, *Kain v. Bluemound East Indus. Park, Inc.,* 2001 WI App 230, ¶ 42, 248 Wis. 2d 172, 635 N.W.2d 640, as well as the same measure of damages.

¶ 30. We recognized a "fraud in the inducement" exception to the economic loss doctrine in *Digicorp,* 262 Wis. 2d 32, ¶ 3, but we were not able to reach a majority decision on the scope of that exception. The *Digicorp* court addressed tort claims grounded in the theory of intentional misrepresentation, or "fraud in

the inducement," saying " 'fraud in the inducement' presents a special situation where parties to a contract appear to negotiate freely—which normally would constitute grounds for invoking the economic loss doctrine —but where in fact the ability of one party to negotiate fair terms and make an informed decision is undermined by the other party's fraudulent behavior." *Id.*, ¶ 48 (quoting *Huron Tool & Eng'g Co. v. Precision Consulting Servs., Inc.*, 532 N.W.2d 541, 545 (Mich. Ct. App. 1995)). We noted that Wisconsin has a longstanding principle that parties need a background of truth and fair dealing in commercial relationships and that a party to a business transaction is under a duty to disclose facts basic to the transaction if he knows the other is about to enter into the transaction with a mistaken or incomplete understanding of those facts, and the other party could reasonably expect a disclosure of those facts. *Id.*, ¶¶ 36–37.

¶ 31. We believe that there are substantial, qualitative differences between the doctrines of intentional misrepresentation and strict liability misrepresentation. These differences preclude us from granting a corresponding exception from the economic loss doctrine for strict liability misrepresentation.

¶ 32. The tort of strict liability misrepresentation arose from the judiciary's determination that in some situations, the accuracy of representations is so important that "intent to deceive and good-faith belief in the truth of the representation are immaterial." *Ollerman v. O'Rourke Co.*, 94 Wis. 2d 17, 25, 288 N.W.2d 95 (1980) (quoting *Whipp v. Iverson*, 43 Wis. 2d 166, 169–70, 168 N.W.2d 201 (1969)). Strict liability misrepresentation places the loss flowing from certain types of unintentional misrepresentations on the "innocent" defendant

rather than the "innocent" plaintiff. *Merrill Lynch, Pierce, Fenner & Smith, Inc. v. Boeck,* 127 Wis. 2d 127, 139, 377 N.W.2d 605 (1985) (quoting *Gauerke v. Rozga,* 112 Wis. 2d 271, 280, 332 N.W.2d 804 (1983)); *Stevenson v. Barwineck,* 8 Wis. 2d 557, 562, 99 N.W.2d 690 (1959) (citing cases). A plaintiff asserting a claim of strict liability misrepresentation is only required to show that the defendant: (1) made the representation on the defendant's personal knowledge or under circumstances in which he necessarily ought to have known the truth or untruth of the statement; and (2) had an economic interest in the transaction from which he expects to gain some economic benefit. *Boeck,* 127 Wis. 2d at 138–39. The certification memorandum observes that strict responsibility misrepresentation may well apply in situations where the parties are not in equal bargaining positions or the purchaser may not be in the best position to assess the risk of economic loss—two assumptions upon which the economic loss doctrine rests.

¶ 33. A plaintiff alleging intentional misrepresentation, on the other hand, faces a more substantial burden of proof. Such a plaintiff must prove that the defendant: (1) either knew the representation was untrue or made the representation recklessly without caring whether it was true or false; and (2) made the representation with intent to deceive and induce the plaintiff to act upon it to the plaintiff's pecuniary damage. *Ollerman,* 94 Wis. 2d at 25.

¶ 34. The misrepresentation in strict liability misrepresentation often does not rise to the level of the deceitful behavior exhibited in intentional misrepresentation cases. Perhaps for that reason, the United States Court of Appeals for the Seventh Circuit correctly

647

predicted that we "would not allow a negligence or strict liability misrepresentation claim seeking to recover economic damages." *Cooper Power Sys., Inc. v. Union Carbide Chems. & Plastics Co.*, 123 F.3d 675, 682 (7th Cir. 1997). If Van Lare believed that the facts of his case constituted "fraud in the inducement," he was free to pursue a claim alleging intentional misrepresentation. At trial, he withdrew that claim.

C. New Trial in the Interest of Justice

¶ 35. Van Lare argues that his choice to dismiss certain claims was based upon the circuit court's original conclusion that the economic loss doctrine did not bar his strict liability claim. Accordingly, he suggests that, in the interest of justice, he should be awarded a new trial to pursue an intentional misrepresentation claim or a claim under Wis. Stat. § 100.18, or both.

¶ 36. Wisconsin Stat. § 751.06 provides us with discretion to prevent miscarriages of justice. It provides in pertinent part:

> [I]f it appears from the record that the real controversy has not been fully tried, or that it is probable that justice has for any reason miscarried, the court may reverse the judgment or order appealed from, regardless of whether the proper motion or objection appears in the record, and may direct the entry of the proper judgment or remit the case to the trial court for the entry of the proper judgment or for a new trial, and direct the making of such amendments in the pleadings and the adoption of such procedure in that court, not inconsistent with statutes or rules, as are necessary to accomplish the ends of justice.

This court's interpretation of the statute dictates that a new trial may be ordered in two situations: (1) if the

648

real controversy has not been fully tried; or (2) if it is probable that justice has for any reason miscarried. *Morden v. Cont'l AG*, 2000 WI 51, ¶ 88, 235 Wis. 2d 325, 611 N.W.2d 659. We are normally quite reluctant to exercise our discretion to grant a new trial under § 751.06, and we will do so only when the circumstances are "exceptional." *Id.*, ¶ 100.

¶ 37. In this case, the "real controversy" was Van Lare's contract claim. That claim was not tried because the period of limitation ran out. Van Lare then had a choice whether to move forward with an intentional misrepresentation claim or a strict liability claim, or perhaps both. He chose strict liability and that controversy was fully tried, with Van Lare receiving a successful jury verdict. The verdict was ultimately vacated by the circuit court. Had the circuit court not changed its position, the strict liability jury verdict would have been overturned on appeal. It is a bit late now for Van Lare to argue that "the real controversy" was intentional misrepresentation and that intentional misrepresentation was not fully tried. After all, Vogt repeatedly argued that the only claim that should be presented to the jury was intentional misrepresentation. The circuit court, in the pre-trial motions hearing, stated: "Well, certainly the case will go forward with the intentional misrepresentation. That's conceded by the defense." Yet, Van Lare sent strict liability to the jury instead. We do not think Van Lare can prevail on grounds that the real controversy was not tried.

¶ 38. Van Lare then turns to the second prong of the statute and asserts a miscarriage of justice. Initially, Van Lare could have brought a claim for breach of contract. The period of limitation did not bar such a claim until June 22, 1999, six years after the signing of the Option to Purchase. Van Lare knew about the

potential contract breach prior to that date, as evidenced by his attorney's letter to Vogt. Van Lare instead chose to pursue tort remedies. Subsequently, Van Lare withdrew his intentional misrepresentation and Wis. Stat. § 100.18 claims.

¶ 39. It is true that on July 9, 2001, before trial, the circuit court stated:

> As a practical matter, I would not submit to the jury both intentional and strict. We would do one or the other, so we're probably talking intentional. So, the only other one we would look at is negligent misrepresentation, if that becomes applicable in testimony. I'll let you renew your argument at the time of trial.

At the close of evidence at trial, Vogt's counsel again objected to strict liability but lost. Van Lare's counsel then chose strict liability without making a new argument about submitting both theories. He made an understandable strategic decision to go forward on the theory that offered the optimum chance for success with the jury but he did not simultaneously preserve an objection about going forward with two theories.

¶ 40. Looking at the evidence, including the "as is" clause in the option, the need to revise the June 22 option *twice* before the closing, and the unutilized opportunity for investigation of the site, we are not convinced that justice has miscarried. In our opinion, any injustice that may have beset Van Lare was largely avoidable and, therefore, does not overcome our usual reluctance to grant a new trial.

## CONCLUSION

¶ 41. We conclude that the economic loss doctrine precludes strict liability misrepresentation claims involving a commercial real estate contract negotiated at

arm's length between parties represented by counsel. By so holding, we conform to our precedent and uphold the policies underlying the economic loss doctrine, maintaining the fundamental distinction between the law of contract and the law of tort.

¶ 42. We find no justification for creating an exception to the economic loss doctrine for strict liability misrepresentation claims in a commercial real estate context; and, because we feel that any injustice suffered by Van Lare was largely avoidable, we find no basis on which to award Van Lare a new trial to pursue alternative theories of liability.

*By the Court.*—The judgment and order of the circuit court are affirmed.

¶ 43. DIANE S. SYKES, J., did not participate.

¶ 44. ANN WALSH BRADLEY, J. (*concurring*). I write separately to forestall revisionist interpretations of the holding in *Digicorp, Inc. v. Ameritech Corp.*, 2003 WI 54, 262 Wis. 2d 32, 662 N.W.2d 652, by those of us who participated in the case. The holding of the case is explained in a footnote to the *Digicorp* opinion. 262 Wis. 2d 32, ¶ 5, n. 2. The footnote states:

> A majority of this court, Justices Crooks, Prosser, and Sykes, rejects the broad exception that the court of appeals adopted in *Douglas-Hanson.* However, because Justice Sykes would not adopt any fraud exception, there is also a majority of this court, Justices Bradley, Bablitch and Sykes, that rejects the narrow exception that was adopted by the *Huron Tool* court. Two Justices, Bradley and Bablitch, dissent stating that the *Douglas-Hanson* exception should apply. A majority holds that a fraud in the inducement exception to the economic loss doctrine exists, but there is an even split as to what the fraud in the inducement exception

651

entails. While four Justices agree that there should be an exception, only two Justices, Crooks and Prosser, agree that the *Huron Tool* exception should be adopted. Chief Justice Abrahamson and Justice Wilcox did not participate in this case.

¶ 45. After the opinion was released, the plaintiff, Digicorp, joined Bacher Communications, Inc., a third-party defendant, in a motion for reconsideration on the grounds that the court did not have a clear majority by which to reverse and remand the decision to the court of appeals. They asked us to clarify our reasoning and the import of the holding as set forth in footnote 2. The third-party defendant's motion for reconsideration stated:

> Public policy dictates that the courts should strive to make good law or, at least, clarify the law. In the absence of the ability to do so, the courts should strive to uphold the law as it exists. . . . In essence, the Court here provided a decision without an opinion. Ultimately, the Court has determined that they will over-rule the Court of Appeals, but can offer no reasons of precedential value as to why the Court of Appeals is wrong, or what rule of law is correct.

We denied the motion for reconsideration without comment or further clarification.[1]

¶ 46. Those of us who participated in *Digicorp* may offer differing interpretations of the intent and consequences of footnote 2. However, when asked for clarification in the motion for reconsideration, we denied the motion without comment, leaving the interpretation for another day. That day will come when a

---

[1] The motion was denied on September 30, 2003. Only four justices considered the motion, because Justice Bablitch retired from the court prior to its consideration.

full court can rule on the issue in a case that properly presents it. This is not such a case.

¶ 47. N. PATRICK CROOKS, J. (*concurring*). While I agree with the majority's holding in this case, I write, today, to emphasize the action taken in our decision in *Digicorp, Inc. v. Ameritech Corporation,* 2003 WI 54, 262 Wis. 2d 32, 662 N.W.2d 652, regarding the fraud in the inducement exception to the economic loss doctrine. Even though the majority only briefly discusses *Digicorp,* majority op., ¶ 30, I write separately to stress that the *Digicorp* majority clearly rejected a broad fraud in the inducement exception to the economic loss doctrine. *Digicorp,* 262 Wis. 2d 32, ¶ 3.

¶ 48. The *Digicorp* decision extensively discussed *Huron Tool and Engineering Company v. Precision Consulting Services, Inc.,* 209 Mich. App. 365, 532 N.W.2d 541 (1995), and *Douglas-Hanson Company, Inc. v. BF Goodrich Company,* 229 Wis. 2d 132, 598 N.W.2d 262 (Ct. App. 1999), two cases dealing with fraud in the inducement exceptions to the economic loss doctrine.

¶ 49. The *Huron Tool* decision adopted a narrow fraud in the inducement exception, concluding that a "plaintiff may only pursue a claim for fraud in the inducement extraneous to the alleged breach of contract." *Huron Tool,* 209 Mich. App. at 374. This narrow exception to the economic loss doctrine does not apply when the fraud in the inducement is interwoven with the contract. *Digicorp,* 262 Wis. 2d 32, ¶ 3. Thus, in applying this narrow exception, a court must "determine whether the fraud involved matters for which risks and responsibilities were extraneous to, or interwoven into, the contract." *Id.,* ¶ 53.

¶ 50. In contrast, the *Douglas-Hanson* decision proposed a broad fraud in the inducement exception to

the economic loss doctrine, holding "that the economic loss doctrine does not bar claims for intentional misrepresentation when the misrepresentation fraudulently induces a party to enter into a contract." *Douglas-Hanson,* 229 Wis. 2d at 149–50. In other words, this exception would appear to permit a tort action whenever it is claimed that a contract was induced by fraud. *Digicorp,* 262 Wis. 2d 32, ¶ 39.

¶ 51. Even though a majority in *Digicorp* did not adopt *Huron Tool*'s narrow fraud in the inducement exception, a majority of the justices participating in *Digicorp clearly* rejected *Douglas-Hanson*'s broad fraud in the inducement exception to the economic loss doctrine. *Id.,* ¶ 3. Five members of the court participated in the *Digicorp* decision. While four justices recognized a fraud in the inducement exception to the economic loss doctrine, only two of these four justices would have adopted a narrow exception similar to *Huron Tool,* and two other justices would have adopted the broader exception set forth in *Douglas-Hanson. Digicorp,* 262 Wis. 2d 32, ¶ 5 n.2. *See also Tietsworth v. Harley-Davidson, Inc.,* 2004 WI 32, ¶¶ 32–34, 270 Wis. 2d 146, 677 N.W.2d 233. The fifth justice rejected the *Douglas-Hanson* exception, and would not recognize any fraud in the inducement exception.[1] Thus, while we did not

---

[1] Our decision in *Digicorp, Inc. v. Ameritech Corp.,* 2003 WI 54, ¶ 5 n.2, 262 Wis. 2d 32, 662 N.W.2d 652, explained the division of the court on the fraud in the inducement exception as follows:

A majority of this court, Justices Crooks, Prosser and Sykes, rejects the broad exception that the court of appeals adopted in *Douglas-Hanson.* However, because Justice Sykes would not adopt any fraud exception, there is also a majority of this court, Justices Bradley, Bablitch and Sykes, that rejects the narrow exception that was adopted by the *Huron Tool* court. Two Justices, Bradley and

reach a decision in *Digicorp* as to the extent of the fraud in the inducement exception to the economic loss doctrine, a majority recognized that there is such an exception, and rejected the broad *Douglas-Hanson* exception. *Digicorp,* 262 Wis. 2d 32, ¶ 5 n.2.

¶ 52. For the foregoing reasons, I respectfully concur.

¶ 53. I am authorized to state that Justice JON P. WILCOX joins this concurrence.

Bablitch, dissent stating that the *Douglas-Hanson* exception should apply. A majority holds that a fraud in the inducement exception to the economic loss doctrine exists, but there is an even split as to what the fraud in the inducement exception entails. While four Justices agree that there should be an exception, only two Justices, Crooks and Prosser, agree that the *Huron Tool* exception should be adopted. Chief Justice Abrahamson and Justice Wilcox did not participate in this case.