Todd WALKER and Tammy Walker,
Plaintiffs-Appellants,

v.

RANGER INSURANCE COMPANY and Master
Gas Service Company, Inc.,
Defendants-Respondents.

Court of Appeals

*No. 2005AP709. Submitted on briefs January 17, 2006.
—Decided February 14, 2006.*

2006 WI App 47

(Also reported in 711 N.W.2d 683.)

On behalf of the plaintiffs-appellants, the cause was submitted on the briefs of *Bryan S. Seidl*, of *Seidl & Stingl, S.C.* of Rhinelander.

On behalf of the defendants-respondents, the cause was submitted on the brief of *John V. McCoy* and *Elizabeth R. Sandquist* of *McCoy & Hofbauer, S.C.* of Waukesha.

Before Cane, C.J., Hoover, P.J., and Peterson, J.

¶ 1. CANE, C.J.   Todd and Tammy Walker appeal a judgment and an order of the circuit court, which granted summary judgment in favor of Master Gas Service Company, Inc., and its insurer, Ranger Insurance Company. The Walkers contend the court erred when it found that the economic loss doctrine barred the Walkers' negligence claim. The Walkers also appeal an order denying their motion in limine, thereby permitting Master Gas's expert witnesses to testify regarding the standard of care within the propane industry. Master Gas contends that, in any event, a finding of liability would be contrary to public policy, and we should therefore affirm the dismissal. We agree with the Walkers' arguments, and accordingly we reverse the trial court's dismissal of the claim and remand the matter for further proceedings.

## BACKGROUND

¶ 2.   The Walkers purchased a mobile home, intending to use it as rental property. They entered into an oral rental contract for the home with Patrick McCabe. McCabe was responsible for paying utilities, including the propane gas that heated the home. McCabe opened an account with Master Gas for propane delivery, and he was required to pay for the propane tank refills on a collect on delivery basis.

¶ 3.    On one occasion, McCabe wrote a check to Master Gas for the amount necessary to refill his propane tank. The bank rejected McCabe's check due to insufficient funds. Master Gas communicated with McCabe that he must pay the bill in full. After multiple attempts seeking payment from McCabe, Master Gas turned off the propane on the propane tank in early February, leaving the home unheated. Master Gas left a note on the door of the home stating "We also need owners' phone and address." McCabe abandoned the property, and Master Gas never notified the Walkers that the propane had been shut off. Master Gas ultimately conceded it had Todd's phone number.

¶ 4.    Temperatures at the time the propane was shut off were below freezing. Two weeks passed before Todd visited the home and discovered that the propane had been shut off. Todd found that the pipes had burst, and the home was severely flooded. Due to the water from the burst pipes, significant damage was present throughout the home.

¶ 5.    The Walkers filed a negligence claim against Master Gas alleging that Master Gas owed the Walkers a duty of care, and it should have notified them that it planned to shut off the propane. The court granted Master Gas's motion for summary judgment on the basis that the Walkers' claim was barred by the economic loss doctrine. The court never addressed Master Gas's argument that public policy also barred the claim. Prior to the court's summary judgment ruling, it also ruled that Master Gas's industry experts could testify regarding the appropriate duty of care Master Gas owed the Walkers. Specifically, Master Gas contended the experts would testify regarding the standard of care owed in this case according to propane industry standards.

## DISCUSSION

¶ 6. We review summary judgment without deference, using the same methodology as the trial court. *Green Spring Farms v. Kersten*, 136 Wis. 2d 304, 315, 401 N.W.2d 816 (1987). Summary judgment is appropriate when no material facts are in dispute, and the moving party is entitled to judgment as a matter of law. Wis. Stat. § 802.08.[1] Our method of analysis of summary judgment is well documented, and it will not be repeated here. *See, e.g., Smith v. Dodgeville Mut. Ins. Co.*, 212 Wis. 2d 226, 232, 568 N.W.2d 31 (Ct. App. 1997). Whether application of the economic loss doctrine is appropriate is a question of law we review without deference. *Prent Corp. v. Martek Holdings, Inc.*, 2000 WI App 194, ¶ 10, 238 Wis. 2d 777, 618 N.W.2d 201.

¶ 7. We agree with the Walkers' contention that the trial court erroneously ruled that the economic loss doctrine barred their negligence claim. The economic loss doctrine is a judicially created doctrine that seeks "(1) to maintain the fundamental distinction between tort law and contract law; (2) to protect commercial parties' freedom to allocate economic risk by contract; and (3) to encourage the party best situated to assess the risk [of] economic loss, the commercial purchaser, to assume, allocate, or insure against that risk." *Van Lare v. Vogt, Inc.*, 2004 WI 110, ¶ 17, 274 Wis. 2d 631, 683 N.W.2d 46.

---

[1] All references to the Wisconsin Statutes are to the 2003–04 version unless otherwise noted.

849

¶ 8.   The doctrine holds "that a commercial purchaser of a product cannot recover solely economic losses from the manufacturer under negligence or strict liability theories, particularly where the warranty given by the manufacturer specifically precludes the recovery of such damages." *Id.*, ¶ 18. Gradually, Wisconsin courts have extended the economic loss doctrine to allow its application in cases involving a noncommercial party, *see, e.g., Linden v. Cascade Stone Co.*, 2005 WI 113, 283 Wis. 2d 606, 699 N.W.2d 189, and to cases involving real estate. *See, e.g., Van Lare*, 274 Wis. 2d 631.

¶ 9.   Here, the economic loss doctrine does not bar the Walkers' common law negligence claim because elements necessary for its application are not present. First, the damages the Walkers suffered were not the result of a defective product, and the case does not involve real estate. The Walkers contend that Master Gas negligently turned off the propane service to the home, and due to the lack of heat, the pipes burst and significant damage occurred as a result. Specifically, the Walkers argue the damage that would ensue from turning off the propane was foreseeable, and Master Gas was therefore negligent for not attempting to notify the Walkers before shutting it off. The alleged negligence does not flow from the purchase of a defective product or real estate but, rather, from the actions of Master Gas.

¶ 10.   Further, no contractual relationship existed between the Walkers and Master Gas. "[W]here parties are linked to each other by contract, the economic loss doctrine may be invoked to avoid drowning contract law

850

in a 'sea of tort.'" *Linden*, 283 Wis. 2d 606, ¶ 7. However, when no contractual relationship exists, it is equally important to prevent an allegedly damaged party from "fall[ing] between the stools of tort and contract." *See Miller v. U.S. Steel Corp.*, 902 F.2d 573, 575 (7th Cir. 1990). Master Gas and the Walkers had no contract, so it is impossible for the Walkers to pursue any contract damages. Barring the Walkers from bringing their negligence claim would likely leave them with no other recourse against Master Gas. The economic loss doctrine exists to compel parties bound by a contractual relationship to pursue damages via contract, not to prevent an injured party from bringing a potentially viable negligence claim when no contract exists. Thus, we conclude that the economic loss doctrine does not bar the Walkers from bringing their common law negligence claim against Master Gas.

¶ 11.   Master Gas argues that even if the economic loss doctrine is not applicable, "summary judgment is appropriate because, as a matter of law, the [Walkers] cannot prove a duty of care by Master Gas to the Walkers." *See Bence v. Spinato*, 196 Wis. 2d 398, 417, 538 N.W.2d 614 (Ct. App. 1995) ("If a trial court reaches the correct result based on erroneous reasoning, we will affirm."). Master Gas incorrectly attempts to analyze this issue based on whether Master Gas owed the Walkers a duty of care. In this state, "one always owes a duty of care to the world at large." *Rockweit by Donohue v. Senecal*, 197 Wis. 2d 409, 433, 541 N.W.2d 742 (1995). This issue is properly analyzed regarding whether Master Gas acted negligently. In order to prove negligence, there must exist:   "(1) a breach of (2) a duty owed (3) that results in and (4) an injury or injuries or damages."

*Paul v. Skemp*, 2001 WI 42, ¶ 17, 242 Wis. 2d 507, 625 N.W.2d 860. Our supreme court has recognized:

> Where the facts alleged to give rise to a duty are agreed upon, the question of the existence of a duty is one of law. This question is closely related to the question of whether a defendant is not negligent as a matter of law, *i.e.* based on the facts presented, no properly instructed, reasonable jury could find the defendant failed to exercise ordinary care. Generally, this question is for the jury and should be decided as a matter of law before trial only in rare cases.

*Rockweit*, 197 Wis. 2d at 418–19 (quoting *Olson v. Ratzel*, 89 Wis. 2d 227, 251–52, 278 N.W.2d 238 (Ct. App. 1979)).

¶ 12.   Master Gas has not demonstrated that this case is somehow rare, and thus should not benefit from the trier of fact's analysis on the negligence issue. Given the facts, it is reasonable to believe that a trier of fact could find Master Gas negligent. It was readily foreseeable that shutting off the heat to the property, during a very cold period, might cause the pipes to burst and property damage could occur as a result. Further, Master Gas's actions seem to suggest it believed some exercise of ordinary care was required. Master Gas left a note on the home requesting the Walkers' contact information. For summary judgment, Master Gas conceded it had Todd's phone number, and it is alleged that its own internal procedures require that it obtain contact information for landlords from tenants. Thus, we decline to hold that no negligence exists as a matter of law, and we leave this question for the trier of fact.

¶ 13. Next, the Walkers contend that Master Gas's experts should not be permitted to testify regarding its standard of care owed according to internal propane industry standards when disconnecting propane at a residence. "A circuit court's decision to admit or exclude expert testimony will not be upset on appeal if it has a reasonable basis and was made in accordance with accepted legal standards and in accordance with the facts of record." *State v. Watson,* 227 Wis. 2d 167, 191, 595 N.W.2d 403 (1999). Our supreme court wrote:

> [I]f a witness is qualified as an expert and has specialized knowledge that is relevant because it will assist the trier of fact to understand the evidence or determine a fact in issue, the expert's analysis or opinion will normally be admitted into evidence. That a lay witness of ordinary intelligence may also understand the subject matter does not mean that the opinion of an expert in the field would not be of assistance to the trier of fact in understanding the evidence or determining a fact in issue. As a general rule, then, it is not an erroneous exercise of discretion for the court to admit expert testimony so long as the testimony aids the trier of fact in consideration of the issues.

*Id.* at 187 (citations omitted). The court noted that the proper analysis of whether to admit expert testimony requires focus on whether the testimony will "assist the trier of fact to understand the evidence," rather than whether the testimony involves technical expertise or information that is not within the common knowledge of a lay person. *Id.* at 188.

¶ 14. Applying this standard, we do not see how Master Gas's experts can be permitted to testify to what Master Gas described as the following: "We are talking

about what is the appropriate standard of care for addressing this type of situation in the industry. It's not something the average lay person would know." The issue in this case is whether Master Gas acted negligently when it disconnected the propane to their mobile home without notifying the property owners. Analysis of this issue does not require that the trier of fact have an understanding of the inner workings of the propane industry. Thus, the expert's testimony regarding what the propane industry considers the appropriate standard of care would not assist the trier of fact to understand the relevant evidence. Therefore, the expert's testimony on this issue should not be admitted.

¶ 15. Master Gas also argues that summary judgment is appropriate because the Walkers failed to provide testimony regarding the propane industry's standard of care. Because technical knowledge is not necessary to resolve the standard of care issue in this case, we reject this argument. *See id.* at 191.

¶ 16. Finally, we disagree with Master Gas's argument that we should affirm the summary judgment because even if the Walkers establish Master Gas's negligence, a finding of liability would be contrary to public policy. *See Stephenson v. Universal Metrics, Inc.*, 2002 WI 30, ¶ 42, 251 Wis. 2d 171, 641 N.W.2d 158 ("Even if a plaintiff is able to establish all of the elements of a negligence claim, public policy considerations may dictate against a finding of liability."). Whether to limit liability with a negligence claim due to public policy considerations is a question of law we review without deference. *Gritzner v. Michael R.*, 2000 WI 68, ¶ 27, 235 Wis. 2d 781, 611 N.W.2d 906. Master Gas relies on the following: In a tort action where there is a complete chain of causation between negli-

gence and damage a court may nevertheless deny recovery on the following public policy grounds:

> (1) the injury is too remote from the negligence; (2) the injury is too wholly out of proportion to the tortfeasor's culpability; (3) in retrospect it appears too highly extraordinary that the negligence should have brought about the harm; (4) allowing recovery would place too unreasonable a burden upon the tortfeasor; (5) allowing recovery would be too likely to open the way to fraudulent claims; or (6) allowing recovery would have no sensible or just stopping point.

*Stephenson,* 251 Wis. 2d 171, ¶ 43. Master Gas argues, "Any of the six above referenced factors is sufficient to preclude a finding of liability."[2]

¶ 17.   First, Master Gas contends,

> Given the lack of any relationship between Master Gas and the Walkers, as well as the risks the Walkers assumed when allocating water, propane and electric payment responsibility to the tenant, it is obvious that any liability attributable to Master Gas would be too remote, too highly out of proportion and too extraordinary when compared to the claimed damages.

Considering the facts before us, we disagree. Master Gas was allegedly well aware that McCabe did not own the mobile home and that he was a tenant of the Walkers. It was readily foreseeable that shutting off the heat to the property during a very cold period might cause the pipes to burst and property damage could occur as a result. Thus, we are not compelled to hold

---

[2] We only address those factors that Master Gas sufficiently briefed. *See Estate of Balkus,* 128 Wis. 2d 246, 255, n.5, 381 N.W.2d 593 (Ct. App. 1985).

that liability attributable to Master Gas would be too remote, highly out of proportion or extraordinary.

¶ 18. Master Gas next argues that holding it had an obligation to notify the Walkers of the impending disconnection would place too unreasonable a burden on propane retailers. Again, we disagree. It does not violate public policy to require a company to provide notice to a property owner before turning off the propane for heat, particularly when it is foreseeable that damage may occur as a result. In fact, there are indications that Master Gas itself may have recognized that it should have given notice to the Walkers. It is alleged that Master Gas's own internal procedures required that McCabe furnish Master Gas with the name and telephone number of his landlord before it would set up propane delivery service. For summary judgment, Master Gas conceded that it was aware of Todd's telephone number. Contrary to Master Gas's assertions, we fail to see how imposition of liability in this case would violate public policy. Thus, we reject all of Master Gas's public policy arguments.

*By the Court.*—Judgment and order reversed and cause remanded for further proceedings.